George **FAJERIAK**, Appellant,

v.

**STATE of Alaska, Appellee.**

**No. 1761.**

Supreme Court of Alaska.

March 18, 1974.

---

Alexander O. Bryner, Asst. Public Defender, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Stephen G. Dunning, Asst. Dist. Atty., Seaborn J. Buckalew, Jr., Dist. Atty., Anchorage, John E. Havelock, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR and BOOCHEVER, JJ., and DIMOND, Senior Justice.

BOOCHEVER, Justice.

Appellant George Fajeriak was convicted of first degree murder in 1966. He appeals from the summary dismissal of his application for post-conviction relief.

On November 7, 1964 Anthony Rizzo was murdered; his body was found on the tidal mudflats of Turnagain Arm two days later. George Fajeriak was arrested soon afterward, and a jury subsequently found him guilty of first degree murder. His conviction was affirmed by this court.[1] In 1970 appellant instituted an application for post-conviction relief pursuant to Criminal Rule 35,[2] and the public defender was ap-

---

1. Fajeriak v. State, 439 P.2d 783 (Alaska 1968), cert. denied 393 U.S. 881, 89 S.Ct. 184, 21 L.Ed.2d 155 (1968).

2. Criminal Rule 35(b) provides:
   (b) Post Conviction Procedure—Scope. Any person who has been convicted of, or sentenced for, a crime and who claims:
   (1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;
   (2) that the court was without jurisdiction to impose sentence;
   (3) that the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance wtih the sentence authorized by law;
   (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
   (5) that his sentence has expired, his probation, parole or conditional release have been unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint;
   (6) that the conviction or sentence is otherwise subject to collateral attack upon any ground or alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy; or
   (7) that there has been a significant change in law, whether substantive or procedural, applied in the process leading to applicant's conviction or sentence, when sufficient reasons exist to allow retroactive application of the changed legal standards;
   may institute a proceeding under this rule to secure relief.

pointed to represent him. After a host of motions, pleadings, and affidavits, relief was denied on May 31, 1972 without holding an evidentiary hearing. This appeal was brought shortly thereafter.

Criminal Rule 35(g)(3) sets forth the applicable standard for appraising motions for summary disposition in post-conviction relief proceedings:

> The court may grant a motion by either party for summary disposition of the application when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Although this standard differs but slightly from the rule governing the summary dismissal of petitions for post-conviction relief in the federal courts,[3] Criminal Rule 35(g)(3) does enjoy the advantage of providing an orderly procedure for the expeditious disposition of non-meritorious applications for post-conviction relief without the necessity of holding a full evidentiary hearing.[4] We thus must decide whether any of Fajeriak's four substantive allegations present a "genuine issue of material fact" so as to require an evidentiary hearing.

## I. EAVESDROPPING UPON ATTORNEY-CLIENT COMMUNICATIONS

The appellant surrendered to police on November 11, 1965 upon learning that he was being sought in connection with Anthony Rizzo's murder. Unable to post bail, he remained incarcerated until at least January 3, 1966. On November 22, Fajeriak wrote Superior Court Judge Ralph E. Moody (to whom the case had been assigned) to complain that the jail authorities were electronically monitoring his conversations with his attorney.[5] Considerable evidence substantiating this charge was adduced at the hearing on a motion by Fajeriak's newly-appointed attorney, Stanley McCutcheon, to compel the jail authorities to permit him to interview his client in privacy.[6] According to McCutcheon, a number of attorneys had known of the existence of a concealed microphone in the jail conference room for several years.[7] Mc-

3. The federal counterpart to Crim.R. 35(g)(3) is 28 U.S.C. § 2255, which provides in pertinent part:
   Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

4. As we recently observed:
   The present rule is an attempt to resolve the dilemma encountered under the Federal (and pre-1967 Alaska) rule, which was "too inflexible in attempting to dispose of applications for post-conviction relief either on the pleadings, which is ordinarily too early, or after a plenary hearing, which is all too often unnecessary."
   Donnelly v. State Opinion No. 965, 516 P.2d 396, at 398, n. 4 (Alaska 1973), quoting from American Bar Association Standards Relating to Post-Conviction Remedies § 4.5, Commentary at 69 (Approved Draft 1968).

5. In an affidavit submitted to this court on March 7, 1973, Fajeriak stated that these conferences took place between November 11 and November 19. The record establishes that the appellant met with his first attorney, Peter Kalamarides, in the jail conference room a number of times during November. Fajeriak's affidavit explains that he learned of the illicit eavesdropping when the district attorney came to his cell on November 19 to interrogate him. According to Fajeriak's account, when the district attorney found Fajeriak uncooperative, he flew into a rage and related to him out of spite the content of his conversations with his attorney. When the appellant accused him of bugging the jail conference room, the district attorney reportedly challenged him to "prove it".

6. This motion was not prompted by Fajeriak's letter, but was instituted in response to the jail authorities' denial of McCutcheon's request for a private room in which to speak to his client.

7. Fajeriak's third attorney, Joe Josephson, confirmed the existence of a speaker in the conference room, but stated that he did not realize it was a listening device.

Cutcheon stated that it was his practice to short out the device during conferences with his own incarcerated clients, while another prominent Anchorage attorney covered it with books. He disclosed to the court that the Anchorage Times had recently published an exposé of the "bug", replete with a picture of the device and an admission by the Chief of Police that inmate-attorney communications had in fact been monitored on previous occasions. The outcome of this hearing was a blanket order directing the Chief of Correctional Institutions for the State of Alaska to make available to all inmates facilities for private and confidential consultations with their attorneys. The trial court did not, however, attempt to determine whether, as Fajeriak had claimed in his letter, the state had already eavesdropped on appellant's confidential attorney-client communications.

Appellant alleged these facts specifically and by reference to the record in his application for post-conviction relief and in an affidavit filed with this court. The state concedes on appeal that the application, in conjunction with the supplementary affidavit, presents grounds for requiring the holding of an evidentiary hearing, and we agree. We further so hold based on the application itself, without reference to the affidavit.[8] According to Criminal Rule 35(g)(3), summary disposition of an application for post-conviction relief is appropriate only when it appears that "there is

no genuine issue of material fact". Far from discrediting appellant's allegations, the record strongly tends to corroborate them, and we find that "a genuine issue" within the meaning of Criminal Rule 35(g)(3) has therefore been raised. Further, there can be little doubt that this unresolved factual issue is legally "material", for interceptions of attorney-client communications have long been held violative of due process of law[9] and of the right to the effective assistance of counsel.[10] As the United States Court of Appeals for the District of Columbia wrote in Coplon v. United States:[11]

. . . [The fifth and sixth] Amendments guarantee to persons accused of crime the right privately to consult with counsel both before and during trial. This is a fundamental right which cannot be abridged, interfered with, or infringed in any manner. The prosecution is not entitled to have a representative present to hear the conversations of accused and counsel.[12]

The spectacle of the state spying on attorney-client communications of persons placed in its custody offends even the least refined notions of fundamental fairness and due process of law, and if it took place we find it reprehensible. Such a practice subjects the accused to having confidential information conveyed to, and possibly utilized by, an unfriendly entity. Of constitutionally greater import, it defeats the sixth amendment right to consult privately with

8. We decline to consider the evidentiary affidavits filed for the first time in this court since the practice tends to transform appellate review into *de novo* decision-making.

9. The fifth amendment to the United States Constitution provides in pertinent part:
No person shall . . . be deprived of life, liberty, or property without due process of law . . . .

10. The sixth amendment to the United States Constitution guarantees that:
In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.

11. 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).

12. *Id.* at 759. *See* State of South Dakota v. Long, 465 F.2d 65, 71–73 (8th Cir. 1972), cert. denied sub nom. Hale v. South Dakota, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973); Gradsky v. United States, 376 F.2d 993, 997 (5th Cir. 1967), cert. denied sub nom. Grene v. United States, 389 U.S. 908, 88 S.Ct. 224, 19 L.Ed.2d 224 (1967), reh. denied sub nom. Grene v. United States, 389 U.S. 998, 88 S.Ct. 488, 19 L.Ed.2d 505 (1967), partially vacated sub nom. Roberts v. United States, 389 U.S. 18, 88 S.Ct. 1, 19 L.Ed.2d 18 (1967); accord, Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879, 881 (1953), cert. denied 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955), reh. denied 349 U.S. 969, 75 S.Ct. 880, 99 L.Ed. 1290 (1955).

counsel, and it affords the state an opportunity to circumvent the defendant's fifth amendment privilege against self-incrimination.[13]   The devastating impact of exposure of confidential information to the prosecution similarly impinges on the right to effective assistance of counsel in defending against criminal charges.[14]

If appellant's allegations are true, then his conviction was unconstitutionally obtained, and he will be entitled to relief pursuant to Criminal Rule 35(b) as we shall delineate below.   This case must therefore be remanded to the superior court to determine, after a full evidentiary hearing, whether Fajeriak's conferences with his attorney between November 11th and November 19th were electronically monitored.

## II.   INTIMIDATION OF WITNESSES

■   In his application for post-conviction relief Fajeriak alleged that the district attorney, by resort to threats and intimidation, prevented potential defense witnesses from testifying.[15]   The state on appeal found itself once again compelled to acknowledge that the augmented record presents an issue which will require an evidentiary hearing, and we are once more in accord with the state's assessment.   The record discloses that Fajeriak interrupted his trial and took the stand in order to in-

form the judge (out of the presence of the jury) that one of his witnesses would not be available to testify because the district attorney had threatened to prosecute a dormant criminal charge against him if he did so.   During the trial one Susan Rogers asserted by affidavit that the district attorney had also threatened to prosecute her (for illegally cohabiting with Fajeriak) if she testified on Fajeriak's behalf.   Finally, the record incontrovertibly shows that the district attorney abused his power of process by subpoenaing a number of witnesses to his office, instead of to the courtroom, during the trial.   This procedure improperly utilized the power of court subpoenas to afford the district attorney the opportunity to attempt to control the witnesses.

The intimidation of defense witnesses so infects a subsequently procured conviction with unreliability that the practice has long been condemned as a transgression of constitutional proportions remediable by post-conviction relief.[16]   The facts as alleged require an evidentiary hearing in order to ascertain whether such intimidation occurred.

## III.   COMPETENCY TO STAND TRIAL

In his application for post-conviction relief, Fajeriak asserted that he was incom-

---

13.   These considerations apply with equal force to the similar provisions of the Alaska Constitution, art. I, sec. 11, providing for assistance of counsel, and art. I, sec. 9, specifying in part: "No person shall be compelled in any criminal proceeding to be a witness against himself."

14.   *Cf.* Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

15.   Neither of the district attorneys who appeared in this appeal participated in the original proceedings.

16.   Pyle v. Kansas, 317 U.S. 213, 216, 63 S.Ct. 177, 178–179, 87 L.Ed. 214, 216 (1942); Wagner v. United States, 418 F.2d 618, 621 (9th Cir 1969).   Indeed, the mere failure to disclose exculpatory witnesses' statements deprives a criminal defendant of due process, and entitles him to post-conviction relief; Jackson v. Wainwright, 390 F.2d 288, 298–

299 (5th Cir. 1968); Guerrero v. Beto, 384 F.2d 886 (5th Cir. 1967); United States ex rel. Meers v. Wilkins, 326 F.2d 135, 136–137 (2nd Cir. 1964); United States ex rel. House v. Swope, 232 F.2d 853, 854 (5th Cir. 1956), vacated sub nom. House v. Swope for consideration in light of new information, 350 U.S. 945, 76 S.Ct. 324, 100 L.Ed. 824 (1956); Imbler v. Craven, 298 F.Supp. 795, 810–811 (C.D. Cal.1969), aff'd per cur. 424 F.2d 631 (9th Cir. 1970), cert. denied sub nom. California v. Imbler, 400 U.S. 865, 91 S.Ct. 100, 27 L.Ed.2d 104 (1970); Application of Kapatos, 208 F. Supp. 883, 887 (S.D.N.Y.1962).   *See also* Levin v. Katzenbach, 124 U.S.App.D.C. 158, 363 F.2d 287, 290 (1966).   *See generally* Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218 (1963) (holding that the deliberate suppression of material evidence favorable to the defense denies due process); Annot., 34 A.L.R.3d 16 (1970).

petent to stand trial as a result of head injuries he had sustained prior to trial.[17] We will, for the sake of argument, credit Fajeriak's affidavit of August 23, 1971, and assume that as a result of his head injuries Fajeriak was, at the time of trial, subject to fleeting blackouts, episodes of dizziness, and lapses of memory.

■ We recognize at the outset that the conviction of an incompetent defendant deprives the accused of due process of law, and his sentence is therefore vulnerable to post-conviction attack.[18] This is true whether or not the defendant presented the issue of incompetency at trial.[19] But incompetency to stand trial is a concept of restricted application. As 12.45.100(a) provides:

> No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.[20]

We cannot seriously entertain the notion that the possibility that a defendant might suffer episodes of vertigo or momentary unconsciousness during trial is enough to render a defendant mentally incompetent. It could with equal justification be argued that a chronically drowsy defendant could not be tried because he might doze off during the proceedings. This is not to make light of the problem, and we trust that had Fajeriak actually experienced a loss of consciousness during trial, the trial judge would have suspended the proceedings until the defendant had recovered his senses. But we cannot in good conscience raise the possibility of momentary blackouts to the dignity of legal incompetence to stand trial.[21]

■ The disruption of memory alleged to have been caused by the head injuries poses a more serious constitutional question, since partial amnesia would undeniably have impaired the appellant's ability to assist in his defense.[22] Nonetheless, after careful deliberation we have concluded that amnesia, be it partial or total, is not an adequate ground for a declaration of incompetency to stand trial.

A number of federal courts have grappled with this issue, and have uniformly rejected the contention that impairment of

---

17. The record confirms that at least one head wound was inflicted. A treating physician's report relates Fajeriak suffered a severe head laceration in an auto accident five months prior to trial. Fajeriak also alleged that a month before the commencement of trial he was shot in the head.

18. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956); Schade v. State, 512 P.2d 907, 913 (Alaska 1973).

19. Pate v. Robinson, 383 U.S. at 385, 86 S.Ct. at 842, 15 L.Ed.2d at 822; Floyd v. United States, 365 F.2d 368, 377 n. 15 (5th Cir. 1966); Taylor v. United States, 282 F.2d 16, 22–23 (8th Cir. 1960). Fajeriak alleged that at trial he did in fact put his mental capacity in issue. But the record clearly indicates that it was the district attorney who first raised the issue of Fajeriak's competency to stand trial, and appellant's counsel who assured the court of Fajeriak's competency, and of his willingness to proceed.

20. This test is substantially identical to the federal statutory standard of incompetency;

see 18 U.S.C. § 4244; Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

21. See Schade v. State, 512 P.2d 907, 914 (Alaska 1973): "The presence of some degree of mental illness is not an invariable barrier to prosecution." See also Crawn v. United States, 254 F.Supp. 669, 673 (M.D.Pa.1966): That there may be something mentally wrong with a defendant or that he may be emotionally unstable does not necessarily render him mentally incompetent to understand for proceedings against him. *Accord* Feguer v. United States, 302 F.2d 214, 236 (8th Cir. 1962), cert. denied 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 10 (1962); Lebron v. United States, 97 U.S.App.D.C. 133, 229 F.2d 16, 18 (1955), cert. denied, 351 U.S. 974, 76 S.Ct. 1035, 100 L.Ed. 1492 (1956); United States v. Adams, 297 F.Supp. 596, 597 (S.D. N.Y.1969).

22. It is significant that in his affidavit Fajeriak did not allege that his amnesia actually impaired his ability to remember the circumstances surrounding the offense itself.

memory warrants a finding of incompetency. For example, in United States v. Knohl,[23] the defendant had recently suffered a stroke, and his attorney informed the court that his client's memory was so poor that it was impossible to prepare for trial. In sustaining the conviction, the court stated flatly that, "Where the defendant complains of nothing more than memory difficulties, there is inadequate ground for holding an accused incompetent to stand trial."[24] The Seventh Circuit has also adopted this position, cogently noting: "In his plight the amnesiac differs very little from an accused who was home alone, asleep in bed, at the time of the crime. . . ."[25]

We concur with these decisions, adding only that in our judgment policy conjoins with precedent to oppose an expansion of the doctrine of incompetency to include amnesia. The potential for fraudulent allegations of memory loss is so great that we would for this reason alone be reluctant to follow amnesia as a ground for a finding of incompetency even if we were otherwise inclined to do so.

■■ That the facts alleged by Fajeriak do not establish that he was in fact in-

competent at the time of trial does not necessarily mean that there was no error in the trial court's refusal to order a psychiatric examination. A defendant need not of course be proved certifiably incompetent to stand trial before the court is required to order a psychiatric examination. AS 12.45.100(b) directs only that "reasonable cause" to believe that the defendant may be incompetent to stand trial be shown.[26]

If enough probative evidence had been adduced prior to Fajeriak's trial to give reasonable cause to believe that Fajeriak was then incompetent, the trial judge would have erred in not ordering a psychiatric examination *sua sponte*. But we do not believe that reasonable cause to order an examination was actually presented. The trial judge was informed only that Fajeriak had recently suffered head wounds, and that he was subject to occasional blackouts or dizzy spells. In view of defense counsel's insistence that Fajeriak was competent to stand trial and was able to assist counsel with his defense, those facts do not, in our opinion demonstrate reasonable cause to believe that Fajeriak might be incompetent so as to require a psychiatric examination.[27] Great defer-

23. 379 F.2d 427 (2nd Cir. 1967), cert. denied 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).

24. *Id.* at 436. *Accord*, United States v. Sullivan, 406 F.2d 180–186, (2nd Cir. 1969).

25. United States v. Stevens, 461 F.2d 317, 320 (7th Cir. 1972), cert. denied 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972), quoting from Note, Amnesia: A Case Study in the Limits of Particular Justice, 71 Yale L.J. 109, 128 (1961). *See also* United States v. Doran, 328 F.Supp. 1261, 1262 (S.D.N.Y. 1971):
[The defendant's] memory is impaired but not evidently inferior, even as impaired, to that of many defendants, less well endowed to begin with, who are made to stand trial.

26. AS 12.45.100(b) provides:
When, after arrest and before the imposition of sentence or before the expiration of any period of probation, the attorney general, the district attorney, or the attorney for the accused has reasonable cause to believe that a person charged with an offense may be presently suffering mental disease or defect or is otherwise so mentally incompetent that he is unable to understand the

proceedings against him or properly to assist in his own defense, he may file a motion for a judicial determination of the mental competency of the accused. Upon that motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall have the accused, whether or not previously admitted to bail, examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. . . .

27. The trial court did make arrangements to have Fajeriak seen by a psychiatrist prior to trial, but the extent of Dr. Mead's "examination" was the reading of an electroencephalogram (which disclosed no abnormality). AS 12.45.100(b) directs that when there is reasonable cause to believe that a person may be incompetent to stand trial "the court shall have the accused . . . examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court." In United States v. Sermon, 228 F.Supp. 972, 975 (W.D.Mo. 1964) the court, in quoting from a doctor's report, said:
"[T]he normal electroencephalogram cannot be taken as contracting [the panel's diagnosis of incompetency] since approxi-

ence is to be accorded defense counsel's assessment in such matters, insofar as he is better able than the trial judge or the prosecutor to assess the defendant's ability to participate in his defense and to understand the nature of the proceedings against him.[28]

## IV. IMPROPER JURY SELECTION

■ Appellant contends that his jury was improperly constituted, and that he was deprived of a trial before a representative cross-section of his peers. However, no challenge to the composition of the jury panel was propounded at trial. Appellant is therefore precluded from raising this issue in his application for post-conviction relief.[29]

## V. PRODUCTION OF THE PRISONER AT THE EVIDENTIARY HEARING

■ Criminal Rule 35(h) provides in pertinent part: "the court may order the applicant brought before it for the hearing." Normally then, whether to order production of the prisoner is a decision left to the discretion of the court below. However, to avoid further delay, we shall address the issue here.

If the state does not concede that eavesdropping occurred, a crucial issue at the evidentiary hearing will be whether, as Fajeriak contends, the district attorney was indeed able to relate to Fajeriak the content of his attorney-client communications. Obviously, Fajeriak's own testimony is an essential prerequisite to a proper adjudication of that claim—a fact which the state readily conceded in oral argument—since he was the only non-adverse witness present. Once it is determined that a prisoner's personal presence at an evidentiary hearing will be necessary, the prisoner must be produced when his testimony will be material and is founded on personal knowledge.[30] We hold that Fajeriak must be permitted to testify at the evidentiary hearing in support of his eavesdropping allegation.[31]

## VI. RELIEF REQUIRED

In order to forestall further delay in the final disposition of appellant's application for post-conviction relief, we also shall indicate what relief Fajeriak will be entitled to should the evidentiary hearing demonstrates the truth of his allegations.

■ When a defendant successfully proves that his confidential communications with his attorney were electronically monitored, he ordinarily must be granted a new trial without demonstrating that he was prejudiced by such action. This holding is compelled by the United States Constitution. In Glasser v. United States,[32] the United States Supreme Court rule that where the trial judge compromised the effectiveness of defendant's counsel by ap-

---

mately 50% of people with known extensive brain damage secondary to arteriosclerosis and other aging changes have normal tracings."
An affidavit of Dr. Aron S. Wolf submitted by Fajeriak to the court below echoes this appraisal. We find that the reading of Fajeriak's EEG did not constitute a psychiatric examination within the meaning of AS 12.45.100(b).

28. See Engelberg, Pre-Trial Criminal Commitment to Mental Institutions, The Procedure in Massachusetts and Suggested Reforms, 17 Cath.U.L.Rev. 163, 206 (1967): "[D]efendant's counsel is obviously in the best position to determine whether the defendant has such capacity."

29. Merrill v. State, 457 P.2d 231, 239 (Alaska 1969). Accord, Shotwell Mfg. Co. v. United States, 371 U.S. 341, 362–363, 83 S.Ct. 448, 460–462, 9 L.Ed.2d 357, 372–373 (1963).

30. Sanders v. United States, 373 U.S. 1, 21–23, 83 S.Ct. 1068, 1080–1081, 10 L.Ed.2d 148, 164–165 (1963); Hayman v. United States, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232, 243 (1952). These cases, which interpret federal law, are relevant here because 28 U.S.C. § 2255, like Crim.R. 35(h), vests discretion to order the production of the prisoner with the trial court.

31. Since he will already be present, there is no reason why Fajeriak should not be allowed to testify with respect to the intimidation-of-witnesses allegation also.

32. 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

pointing him, over the defendant's personal objection, to represent an alleged co-conspirator at the same trial, it would not be necessary for the defendant to show prejudice; the appointment constituted reversible error *per se:*

> The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.[33]

The United States Court of Appeals for the District of Columbia in Coplon v. United States [34] applied this holding to deliberate electronic surveillance of attorney-client conversations. Reasoning that the monitoring of these confidential communications constituted, as had the practice complained of in *Glasser,* a serious infringement of the constitutional right to the effective assistance of counsel (as well as a denial of due process) [35] the court held that:

> [T]he right to have the assistance of counsel is so fundamental and absolute that its denial invalidates the trial at which it occurred and requires a verdict of guilty therein to be set aside, regardless of whether prejudice was shown to have resulted from the denial.[36]

Following *Coplon,* courts have agreed that proof of deliberate eavesdropping upon attorney-client communications automatically invalidates a conviction.[37] The United States Supreme Court implicitly adopted this rule in Black v. United States,[38] where, upon learning that the defendant's conviction may have been procured in part by the use of information obtained during electronic eavesdropping upon the defendant's conversations with his attorney, the Court vacated the conviction, declining the government's invitation to remand to the District Court to determine whether the defendant had been prejudiced by these activities. In light of this imposing array of authority, ordinarily a new trial will be a matter of right once the eavesdropping is proved. However, we note in this case that the eavesdropping was called to the attention of Fajeriak's second counsel, Stanley McCutcheon, before trial. During the course of the second hearing on the motion to provide private conferences between Fajeriak and McCutcheon, McCutcheon first became aware of alleged eavesdropping into Fajeriak-Kalamarides conferences. McCutcheon acknowledged that prior eavesdropping would "come clear and independent of my [current] objection." After the order to provide visitation in confidence was entered, no further action was taken regarding eavesdropping before the trial court or before this court on direct appeal. Under the circumstances, the failure to seek a protective order, demand discovery of the sources of prosecution evidence, demand dismissal, or

---

33. *Id.* at 76, 62 S.Ct. at 467, 86 L.Ed. at 702.

34. 89 U.S.App.D.C. 103, 191 F.2d 749 (1951), cert. denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).

35. *See* notes 9–13 *supra* and accompanying text.

36. 191 F.2d at 759.

37. State of South Dakota v. Long, 465 F.2d 65, 71–72 (8th Cir. 1972), cert. denied sub nom. Hale v. South Dakota, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1972); United States v. Rispo, 460 F.2d 965, 975–978 (3rd Cir. 1972); Gradsky v. United States, 376 F.2d 993, 997 (5th Cir. 1967), cert. denied sub nom. Grene v. United States, 389 U.S. 908, 88 S.Ct. 224, 19 L.Ed. 224 (1967), reh. denied sub nom. Grene v. United States, 389 U.S. 998, 88 S.Ct. 488, 19 L.Ed.2d 505 (1967), partially vacated sub nom. Roberts v. United States, 389 U.S. 18, 88 S.Ct. 1, 19 L.Ed.2d 18 (1967); United States v. Lebron, 222 F.2d 531, 534 (2nd Cir. 1955), cert. denied 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); Caldwell v. United States, 92 U.S.App.D.C. 355, 205 F.2d 879, 881 (1953), cert. denied 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955), reh. denied 349 U.S. 969, 75 S.Ct. 880, 99 L.Ed. 1290 (1955). *Cf.* United States v. Venuto, 182 F.2d 519, 522 (3rd Cir. 1950), holding that preventing a defendant from consulting with his attorney during an eighteen-hour court recess was a constitutional violation necessitating reversal without a showing of prejudice.

38. 385 U.S. 26, 27–29, 87 S.Ct. 190, 191–192, 17 L.Ed.2d 26, 28–29 (1966).

seek other appropriate relief may have been a conscious tactic upon the part of Fajeriak and his counsel. Several of the cases which affirmed the general rule that a new trial is a matter of right have nevertheless sustained convictions because the state was able to demonstrate that eavesdropping did not prejudice the defendant.[39] At the evidentiary hearing the state may defeat Fajeriak's demand for a new trial if it can show that there was a knowing and intelligent waiver of a known right [40] to appropriate relief from the Fajeriak-Kalamarides eavesdropping, or if it can show that beyond a reasonable doubt,[41] Fajeriak suffered no prejudice from the eavesdropping.

■ We reject Fajeriak's contention that we should adopt the position taken by the Washington Supreme Court in State v. Cory,[42] and order the dismissal of

all charges should the eavesdropping allegation be proved.[43] However, the court in Cory did note one glaring weakness in the logic underlying the ordering of a retrial: any information obtained during the illegal eavesdropping would be available for use at the second trial. Consequently, if appellant's eavesdropping allegation proves to have merit, the appellant will be entitled to discover any transcription of the monitored conversations, and any notes or memoranda regarding those conversations, that are presently in the district attorney's possession; and at a second trial the state will bear the burden of proving that any evidence introduced is not derived from illegally-monitored conversations.[44]

■ There will also have to be a new trial if the facts adduced at the evidentiary hearing confirm that the state intimidated potential material defense witnesses and

---

39. State of South Dakota v. Long, 465 F.2d at 72; United States v. Lebron, 222 F.2d at 534–535.

40. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); see Murch v. Mottram, 409 U.S. 41, 46–47, 93 S.Ct. 71, 73–74, 34 L.Ed.2d 194, 199 (1972).

41. In Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711 (1967), the Supreme Court held that "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." This standard has been adopted without dissent by the Court in subsequent cases. See, e. g., Schneble v. Florida, 405 U.S. 427, 430, 92 S.Ct. 1056, 1058–1059, 31 L.Ed.2d 340, 344 (1972); Harrington v. California, 395 U.S. 250, 251, 89 S.Ct. 1726, 1727, 23 L.Ed.2d 284, 286 (1969). This court has adopted the same standard; Mead v. State, 504 P.2d 855, 857–858 (1972).

42. 62 Wash.2d 371, 382 P.2d 1019 (1963).

43. Cory involved the deliberate monitoring of attorney-client conversations held in the conference room of a county jail. The court wrote:

   [I]f the investigating officers and the prosecution know that the most severe consequence which can follow from their violation of one of the most valuable rights of a defendant, is that they will have to try the

case twice, it can hardly be supposed that they will be seriously deterred from indulging in this very simple and convenient method of obtaining evidence and knowledge of the defendant's trial strategy. Id. at 1023.

But our concern here is in ensuring that justice is done, not in regulating the conduct of the police or the prosecutor's office. In this instance, such regulation may better be accomplished by statutes imposing appropriate criminal sanctions. Requiring a new trial and excluding any evidence derived from the eavesdropping appears to be an adequate judicial deterrent.

44. See Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453–454 (1963), quoting from Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920):

   "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government's own wrong cannot be used by it. . . . "

prevented them from testifying. Any verdict so procured would be irremediably suspect, and could not therefore be allowed to stand. There can be no argument here that appellant must demonstrate prejudice, for there would be no possible way to gauge how the jury might have reacted to the testimony of the excluded witnesses.

We have examined petitioner's *pro se* briefs with some care, and do not think that any of the allegations contained therein warrant independent discussion here.

One procedural matter that arose on this appeal should be mentioned in order to forestall complications in the future. It appears to be the public defender's belief that since post-conviction applications are assigned to the original trial judge, he is chargeable with knowledge of the entire original trial record, and that the public defender may therefore rely in his appeal upon facts which were not demonstrably presented to the court below either by the application for post-conviction relief or in subsequent motions and memoranda. We disapprove of this practice. In the case at bar, the transcript and record consist of over 2500 pages, and the trial took place several years ago. It would be utterly unreasonable to expect the trial court to be responsible for keeping in mind this staggering amount of material. The portions of the record relied on in the post-conviction proceeding must be specifically indicated to the trial judge.

This case will be remanded to the superior court for an evidentiary hearing, in order to determine whether Fajeriak's conferences with his attorney were monitored, and whether the district attorney intimidated potential defense witnesses. The appellant will have to be present at the hearing.

Reversed and remanded.

ERWIN and FITZGERALD, JJ., not participating.