**Thomas W. BLACKMON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6141.**

Court of Appeals of Alaska.

Nov. 5, 1982.

---

Paul Canarsky, Asst. Public Defender, Fairbanks and Dana Fabe, Public Defender, Anchorage, for appellant.

John Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

PER CURIAM.

After a jury trial held May 14–15, 1981, Blackmon was convicted of criminal mischief in the third degree.[1] He now appeals, claiming error by the trial court in permit-

ting the state to introduce evidence concerning a confidential conversation between Blackmon and his counsel, Mr. Paul Canarsky. After careful consideration of the facts in this case, we agree that evidence of the conversation should not have been admitted.

During a recess in the trial, Blackmon and Canarsky had a conversation which was partially overheard by Alaska State Trooper Lowden, a judicial services officer who, at the time, was on duty as custodian of Blackmon. Trooper Lowden testified that he had seen Canarsky direct Blackmon to an area of the courtroom farthest from Lowden, which was about twenty-five feet away. He admitted that the conversation between Blackmon and Canarsky had the appearance of being private. Lowden further admitted that he was not invited to join the conversation, that Blackmon and Canarsky kept their backs turned toward him, and that both were whispering. Lowden stated that, of the entire conversation, he overheard only about eight or nine words.[2]

Over objection by defense counsel, Judge Stephen Cline permitted the prosecution to call Lowden as a witness to testify about the overheard conversation. The judge ruled that the conversation was not privileged, that it was relevant, and that its probative value outweighed its prejudicial effect.

The issue in this case requires us to determine whether the conversation between Blackmon and Canarsky was confidential and, therefore, privileged. The admissibility of Trooper Lowden's testimony as to what he overheard hinges on the issue whether the confidentiality of Blackmon's conversation with his attorney was pre-

1. AS 11.46.484 provides, in relevant part:
   *Criminal mischief in the third degree.*
   (a) A person commits the crime of criminal mischief in the third degree if, having no right to do so or any reasonable ground to believe he has such a right . . .
   (2) he drives, tows away, or takes the propelled vehicle of another. . . .
   . (b) Criminal mischief in the third degree is a class A misdemeanor.

2. The conduct which served as the basis of Blackmon's conviction involved an apparent attempt to steal a snowmachine. At trial, Lowden testified that he overheard Canarsky ask Blackmon, "Why did you leave?" Blackmon responded, "I couldn't get it started." Lowden also said he saw Blackmon make a pulling motion with his hand, like pulling a starter cord.

served. Alaska Rule of Evidence 503(b) defines the lawyer-client privilege, in part, as follows:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself ... and his lawyer....

The commentary to this rule states:

The requisite confidentiality of communication is defined in terms of intent.... The intent is inferable from the circumstances.... Taking or failing to take precautions may be considered as bearing on intent. "Communications which were intended to be confidential but were intercepted despite reasonable precautions remain privileged."

*See also* 2 J. Weinstein & M. Berger, Weinstein's Evidence, ¶ 503(a)(4)[01] (1979).

■ The essence of the lawyer-client privilege is thus that the client reasonably intend his communication with counsel to be confidential. The extent of precautions taken will normally be a useful indicator not only of actual intent to maintain confidentiality but also of the reasonableness of such an intent. Once a communication is determined to be confidential, the lawyer-client privilege may be asserted to prevent any person from testifying as to its substance. Weinstein, *supra,* ¶ 503(b)[02]. Early decisions reveal a reluctance to extend the lawyer-client privilege's full protection to situations involving passersby or eavesdroppers who overheard lawyer-client conversations. C. McCormick, Law of Evidence § 75, at 154 (2nd ed. 1972). However, there has been support in modern cases for extending the privilege where the client and his lawyer intended their communications to be confidential and where precautions to preserve confidentiality were reasonable under the circumstances. *See United States v. Bigos,* 459 F.2d 639 (1st Cir.1972); *International Business Machines Corporation v. Sperry Rand Corp.,* 44 F.R.D. 10 (D.Del.1968). *See also Fajeriak v. State,* 520 P.2d 795 (Alaska 1974).

■ The facts in the present case plainly show that Blackmon intended to have a secret conversation with Canarsky. Reasonable precautions were, moreover, taken by him not to have the conversation overheard. All of the measures taken by Blackmon and Canarsky evidenced reasonable care on their part to maintain confidentiality.[3] The participants in this conversation were attempting to maintain confidentiality; that they were to a great extent suc-

---

**3.** The state argues that there was an attorney-client conference room immediately available outside the courtroom. In light of the other precautions taken to ensure privacy and the fact that only a "short recess" had been requested, the availability of the conference room is not, alone, enough to establish that the precautions taken by Blackmon and Canarsky were unreasonable. We note in this regard that the trial judge, in finding Lowden's testimony admissible, placed emphasis on the fact that Blackmon's attorney was aware of the conference room and knew that its use could have been requested. This emphasis is misplaced, since it loses sight of the fact that it is the client's intent, and not the intent of his lawyer, that is critical in gauging whether a lawyer-client conversation was meant to be kept within the scope of confidentiality. By the same token, the reasonableness of precautions taken should be viewed from the perspective of the client. In this case, Blackmon was in custody during trial and did not have the freedom to leave the immediate proximity of his custodian without court approval. Nothing in the record demonstrates that Blackmon was aware of the availability of the conference room. Moreover, given the fact of Blackmon's custody, we do not believe it reasonable to expect that he would seek a conference in an interview room outside the courtroom when his own lawyer had directed him to a remote and apparently private corner of the courtroom.

Furthermore, we believe that it would be incompatible with the need for effective and efficient administration of justice to adopt a rule that, in order to preserve the lawyer-client privilege, a request to confer in a private room would be required in cases involving defendants who are being held in custody. Such a rule could only result in frequent and time-consuming disruption of criminal proceedings. Fearful that any courtroom conversation, no matter how secretive, might be the subject of testimony if overheard, a lawyer charged with the duty of representing a defendant in a criminal case would inevitably be forced at every step and turn of trial to request sequestration with his client for the purposes of consultation.

cessful is attested to by the fact that Trooper Lowden managed to hear only several words of the entire conversation between Blackmon and his lawyer. The trial judge even noted on the record that there must have been reliance on Blackmon's part that the situation was such that he could speak freely to his lawyer, since "otherwise he wouldn't have said what he said."

We must conclude, therefore, that the conversation between Blackmon and Canarsky was a confidential one for purposes of applying the lawyer-client privilege. Trooper Lowden should not have been allowed to disclose to the jury what he had heard; his testimony in this regard constituted prejudicial error. The conclusion that we reach is, we believe, necessary to assure that the constitutional right to effective assistance of counsel is not impinged.[4]

The conviction is VACATED and the case REMANDED for a new trial.

---

4. *See Fajeriak v. State,* 520 P.2d at 804, quoting *Coplon v. United States,* 191 F.2d 749, 759 (D.C.Cir.1951), *cert. denied,* 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 690 (1952).