Mike G. SMILOFF, Appellant,

v.

STATE of Alaska, Appellee.

No. 3006.

Supreme Court of Alaska.

May 26, 1978.

Barbara Miracle and John M. Murtaugh, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABI-NOWITZ, CONNOR and BURKE, JJ.

RABINOWITZ, Justice.

Appellant Mike Smiloff was indicted for the crime of lewd and lascivious acts towards a child in violation of AS 11.15.134. Prior to trial Smiloff moved to dismiss the indictment on the grounds that AS 11.15.134 is unconstitutionally void for vagueness, and that the grand jury selection procedures did not comport with either applicable statutory requirements or constitutional mandate. Smiloff also filed a pretrial motion in which he sought to prevent the prosecution's exercise of any peremptory challenges to petit jurors. The three motions were subsequently denied.

After the jury had been selected and immediately prior to opening statements, Smiloff's counsel requested the superior court to examine the accused's competency to stand trial in light of the problems he had encountered in attempting to obtain assistance from Smiloff. The superior court, relying on the prior reports of the examining physician, concluded that there was "no evidence to suggest Mr. Smiloff is other than competent to stand trial." After trial, the jury returned a verdict of guilty, and the superior court sentenced Smiloff to a term of imprisonment of 5 years. This appeal followed.

Before this court, appellant has asserted five separate specifications of error. We turn first to Smiloff's contention that AS 11.15.134 is unconstitutionally vague and overbroad.[1] This specification of error is controlled by *Anderson v. State*, 562 P.2d 351 (Alaska 1977). There, in the face of assertions of vagueness and overbreadth, we upheld the constitutionality of AS 11.15.134(a), stating, in part:

> However, the State argues that AS 11.15.134(a) is meant to punish only lewd and lascivious physical contact with children. We agree. We construe the words 'lewd or lascivious act . . . upon or with the body of a child' to require physical contact of the child's body by the adult or by some instrumentality controlled by the adult.[2]

Smiloff next contends that the superior court erred in denying his motion to dismiss the indictment because unlawful and unconstitutional procedures were utilized in selecting grand jurors. Smiloff's assertions of illegality are bottomed on the contention that the Area Court Administrator from the Third Judicial District added an additional requirement for jury service, namely, that the prospective jurors have lived in the State of Alaska for at least one year. In appellant's view, this one year residency requirement is violative of AS 09.20.050(b)[3] and the equal protection pro-

1. AS 11.15.134(a) provides:
 A person who commits a lewd and lascivious act, including an act constituting another crime, upon or with the body of a child under 16 years of age, intending to arouse, appeal to, or gratify his lust, passions, or sexual desires, or the lust, passions, or sexual desires of the child is punishable by imprisonment for not more than 10 years nor less than one year.

2. *Anderson v. State*, 562 P.2d 351, 353 (Alaska 1973).
 In the case at bar, appellant adopted and incorporated by reference appellant's briefs in the *Anderson* case.

3. AS 09.20.050(b) provides:
 The jury list shall be based on a list of all persons who purchased a resident trapping, hunting or fishing license during the preceding calendar year which showed an Alaskan address (to be prepared by the Department of Fish and Game), a list of all persons who filed a state income tax return during the preceding calendar year which showed an Alaskan address (to be prepared by the Department of Revenue), and a list of all persons who have registered to vote in this state (to be prepared by the lieutenant governor). The departments and the lieutenant governor shall submit their respective files to the Department of Administration not later than January 15 of each year. To the extent that it is available, the files submitted by the departments and the lieutenant governor shall contain the following information for each person on the list for the preceding calendar year: his first name, middle initial, and last name; his residence address as well as his mailing address, including the zip code for each; his social security number; his birth date; and the number of years and months

visions of both the Federal and Alaska Constitutions. In *Hampton v. State*, 569 P.2d 138 (Alaska 1977), we were presented with a challenge that went to the array of both the grand and petit jurors. Parallel arguments were advanced in that case to these now urged by Smiloff. In rejecting Hampton's attack upon the jury array, we said, in part:

There is a one-year residency requirement for jury service in the federal courts. The legislative history of the provision illustrates that the purpose of the provision is to guarantee 'some substantial nexus between a juror and a community whose sense of justice the jury as a whole is expected to reflect.' The constitutionality of the provision has been uniformly upheld.

Applying the 'cognizable group' standards to less-than-one-year residents, we conclude that Hampton's sixth amendment right to an impartial jury was not impaired. The excluded group is not a

static one with definite parameters. There is no common thread, 'a basic similarity in attitudes or ideas or experience,' except the lack of familiarity with the community. While circumstances can be imagined in which bias against a defendant member of the excluded group might exist, that possibility is too remote to justify reversal in the absence of a more specific suggestion of prejudice.[4] (footnotes omitted)

Thus, we conclude that *Hampton* is dispositive of Smiloff's constitutional attack on the grand jury selection procedures employed in the case at bar. As to the contention that the jury selection procedures were also violative of AS 09.20.050(b),[5] we hold that *Hampton*, as well as the provisions of AS 09.20.040 mandate that Smiloff's assertions of statutory violation be rejected.[6]

 Smiloff also challenges the constitutionality of Criminal Rule 24(d)[7] insofar

---

he has been a resident of the state. The files submitted by the departments and the lieutenant governor shall be recorded on magnetic tape compatible with Department of Administration data processing equipment.

4. *Hampton v. State*, 569 P.2d 138, 149 (Alaska 1973).

In *Hampton*, at 148, we further stated:

The term 'cognizable group' was defined by the federal district court in *United States v. Guzman*, 337 F.Supp. 140, 143–44 (S.D.N.Y.), aff'd, 468 F.2d 1245 (2d Cir. 1972), *cert. denied*, 410 U.S. 937, 93 S.Ct. 1397, 35 L.Ed.2d 602 (1973), in the following manner:

A group to be 'cognizable' for present purposes must have a definite composition. That is, there must be some factor which defines and limits the group. A cognizable group is not one whose membership shifts from day to day or whose members can be arbitrarily selected. Secondly, the group must have cohesion. There must be a common threat which runs through the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process. Finally, there must be a possibility that exclusion of the group will result in partiality or bias on the part of juries hearing cases in which group members are involved. That is, the group must have a community of interest which cannot be adequately protected by the rest of the populace. (citation omitted)

5. *See* note 3, *supra*, for the text of AS 09.20.-050(b).

6. AS 09.20.040 provides:

The selection of jurors shall be made in substantial compliance with the following provisions. A failure in substantial compliance which prejudices the rights of a party is reversible error.

In our view, the statutory jury selection procedures were substantially complied with in the case at bar.

7. Criminal Rule 24(d) provides:

*Peremptory Challenges.* After all challenges for cause are completed, the parties shall make or waive their peremptory challenges. First the plaintiff and then the defendant may exercise one or more peremptory challenges alternately until each party successively waives further peremptory challenges or all such challenges have been exercised. A party who waives peremptory challenge as to the jurors in the box does not thereby lose the challenge but may exercise it as to new jurors who may be called. A juror peremptorily challenged is excused without cause. If the offense is punishable by imprisonment for more than one year, the state is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges. If the offense charged is punishable by imprisonment for not more than one year, or by fine or both, each side is entitled to 3 peremptory challenges. If there

as it purports to allow the prosecution peremptory challenges of jurors. Prior to the commencement of his trial, Smiloff sought a protective order arguing that the substantive right of peremptory challenges could not be conferred by rule. The superior court denied the motion; at the trial the state exercised one peremptory challenge.

Smiloff argues that in "American jurisprudence, the prosecutorial peremptory challenge is solely the creature of the legislature—absent any express grant, it is merely an inactive historical oddity." He then points to the fact that the right to prosecutorial peremptories in Alaska stems not from the legislature but from this court in Criminal Rule 24(d). Thus, he argues Rule 24(d) is not merely a procedural rule but confers a substantive right as well. From the foregoing, Smiloff concludes that the rule was not promulgated within the constitutional powers of this court [8] and is thus unconstitutional.[9]

The state takes the position that the prosecution at common law was allowed the functional equivalent of a peremptory challenge and, thus, that AS 01.10.010 [10] operates to preserve that right. Furthermore, the state argues Rule 24(d) is procedural rather than substantive, since it merely implements the constitutional right to an impartial jury. Lastly, the state argues that the legislature has provided for supreme court authority to promulgate Criminal Rule 24(d) in AS 09.20.090.[11]

The prosecution's authority to peremptorily challenge jurors is rooted in the common law. The Ordinances for Inquests (1305), an act of Parliament during the reign of Edward I, limited prosecutorial challenges to those for cause. Prior to that act, the Crown could challenge peremptorily without limitation as to number.[12] However, by rule of the court, the Crown was not required to show cause until the entire panel had been called. Thus, through the "stand aside" procedures employed, the Crown was limited in its challenges only when there was a deficiency of veniremen in the box.[13] In this country Congress enacted a statute in 1790 which established the right of defendants to 35 peremptories in trials for treason and 20 in trials for specified capital felonies.[14] However, the courts held that the government's right to have jurors "stand aside" was inherited as part of the common law [15] and that the 1790 statute did not abrogate that right. The right to a specified number of peremptories was given to the government by Congress

is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly.

**8.** Article IV, section 15 of the Alaska Constitution reads:

The supreme court shall make and promulgate rules governing the administration of all courts. It shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. These rules may be changed by the legislature by two-thirds vote of the members elected to each house.

**9.** *See Thomas v. State*, 566 P.2d 630, 636–38 (Alaska 1977); *Allred v. State*, 554 P.2d 411, 426–27 (Alaska 1976) (Rabinowitz, J., concurring); *Winegardner v. Greater Anchorage Area Borough*, 534 P.2d 541 (Alaska 1975); *Channel Flying, Inc. v. Bernhardt*, 451 P.2d 570 (Alaska 1969).

**10.** AS 01.10.010 provides:

So much of the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States or with any law passed by the legisla-

ture of the State of Alaska is the rule of decision in this state.

**11.** AS 09.20.090 provides:

When a civil case which is to be tried by a jury is called for trial, the clerk shall draw from the trial jury box containing the names of those on the jury panel a number of names or numbers sufficient to name a jury of 12 unless the court directs otherwise. The prospective jurors shall be examined, challenged, and sworn as provided by the rules of the supreme court.

This section is made applicable to criminal cases by AS 12.45.010.

**12.** *Hayes v. Missouri*, 120 U.S. 68, 70–71, 7 S.Ct. 350, 30 L.Ed. 578, 580 (1887). *Accord*, *Swain v. Alabama*, 380 U.S. 202, 213, 85 S.Ct. 824, 13 L.Ed.2d 759, 768 (1965).

**13.** *Id.*

**14.** *Swain v. Alabama*, 380 U.S. at 214, 85 S.Ct. at 832, 13 L.Ed.2d at 769.

**15.** *Id.* at n.13.

in 1865. Although there is no constitutional requirement of the United States or the states to grant peremptory challenges to either the accused or the prosecution,[16] most jurisdictions provide for such challenges by either rule or statute.[17]

Assuming, *arguendo*, that Smiloff is correct in his assertion that Criminal Rule 24(d) concerns substantive rights, we conclude that the rule is not unconstitutional. AS 09.20.090 provides, in part, that "the prospective jurors shall be examined, challenged, and sworn as provided by the rules of the supreme court."[18] We construe AS 09.20.090 as a legislative declaration of the right to peremptory challenges, as well as authorization to this court to deal with the procedural aspects of the right through our rule-making powers.[19]

We next examine the contention that the superior court erred in its denial of defense counsel's request for a competency hearing. After the jury had been sworn, defense counsel raised the issue of Smiloff's competency to stand trial.[20] The prosecution had recently made an offer, in the context of a plea bargain, to Smiloff which defense counsel had recommended accepting; Smiloff refused it. Counsel had had other problems in securing Smiloff's assistance with the defense of the case.[21] A psychiatrist had previously examined Smiloff and found him competent to stand trial.[22] The superior court chose not to conduct an evidentiary hearing, finding no ba-

---

16. *Swain v. Alabama*, 380 U.S. at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 772. *See Stilson v. United States*, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919).

17. *See Swain v. Alabama*, 380 U.S. at 217 n.20, 85 S.Ct. at 834, 13 L.Ed.2d at 771 n.20.

 ABA Standards Relating to Trial by Jury § 2.6 (Approved Draft, 1968) states:
 The number of peremptory challenges and the procedure for their exercise should be governed by rule or statute.

18. For the full text of AS 09.20.090 see note 11, *supra*.

19. Smiloff asserts:
 Since challenges for cause are a common law heritage and constitutionally mandated as an element of a fair and impartial jury, it seems most reasonable that the statute speaks to these challenges. Had the legislature intended to grant the right to peremptory challenges, first they would have utilized the word 'peremptory' and second, the grant would have been express. The legislative history of these sections is devoid of any allusion to peremptory challenges.
 He argues that under the doctrine of *ejusdem generis* "challenged" is a procedural word because "examined" and "sworn" are procedural words. While the rule of interpreting a word in conjunction with those words associated with it is an appropriate analytical tool, the primary inquiry in legislative interpretation is the intent of the legislature. In this situation, where there is a lengthy history of peremptory challenges and where the most often litigated question is the number of peremptories to be allowed rather than the existence of peremptories, we think our construction of AS 09.20.090 is reasonable.

 We have recognized that the line between substance and procedure is an elusive one. If one examines Alaska Criminal Rule 24(d) as it affects the conduct of business in the courts, it is procedural. However, if one looks for a prior existing right of prosecutorial peremptory challenge and does not find one, the rule would create a right and thus be substantive. This is the test laid down in *Channel Flying, Inc. v. Berndardt*, 451 P.2d 570, 575–76 (Alaska 1969). As to the precise issue before the court, the ultimate question is whether the right of the prosecution to peremptory juror challenges is a right created outside of Rule 24(d). We note that the history previously alluded to provides support for the proposition that the right did exist at common law and thus could have been carried over by AS 01.10.010.

20. This is apparently not the first time that the issue had been raised, since two psychiatrists had already examined Smiloff with respect to competency.

21. Defense counsel stated:
 It's my experience in the last 2½ days of jury selection, it's—the problems we had in Mr. Smiloff deciding whether he wanted a jury trial and run all the risks of the prejudice of people hearing this kind of evidence as opposed to a court trial, in my long discussions with him of how he evaluates the evidence, whether or not he can really understand the impact of the testimony upon a jury and make a rational decision of how the jury might view the testimony and once again, helping to decide whether he should contest the case as guilty or contest or whatever.

22. On appeal, Smiloff points out that the Olivier examination was two months before trial with a recent addendum based on earlier tests. This information does not appear in the record.

sis to support an assertion of incompetency.[23]

Smiloff argues that the superior court's refusal to conduct an evidentiary hearing to determine his competency to stand trial resulted in a denial of due process. He asserts that he had the right to examine the experts as to the basis of their opinions; that the new factors presented by his trial counsel mandated a fresh determination; and that he had met the burden prerequisite to a hearing. The state, on the other hand, argues that Smiloff's competency to stand trial had been fully and adequately explored. Thus, the state contends that the superior court did not abuse its discretion by refusing to hold an evidentiary hearing on the issue of Smiloff's competency.

AS 12.45.100,[24] patterned after 18 U.S.C. § 4244,[25] provides that defendants who lack the capacity to understand the proceedings or to assist in the defense may not be tried, convicted or sentenced so long as the incapacity endures. The statute provides that if the examining psychiatrist reports that the defendant is incompetent to stand trial, "the court shall hold a hearing, upon due notice." However, the statute is silent on the procedures to be employed if the psychiatrist's reports indicate that the accused is competent. In *Schade v. State*, 512 P.2d 907, 914 (Alaska 1973), we held that where "the psychiatric examination of the defendant yields professional findings that the defendant is competent to stand trial, the question of whether to hold . . . evidentiary hearings is addressed to the sound discretion of the trial court." Thus, the question is whether the problems that counsel had encountered mandated an independent determination by the superior court of Smiloff's competency to stand trial at that time.

In *Fajeriak v. State*, 520 P.2d 795, 802–03 (Alaska 1974), the court stated:

> cused, or upon its own motion, the court shall have the accused, whether or not previously admitted to bail, examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may be submitted, including that of the reporting psychiatrist, and court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present mental disease or defect or of other mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect to his mental condition. No statement made by the accused in the course of an examination into his mental competency provided for by this section, whether the examination is with or without the consent of the accused, may be admitted in evidence against the accused on the issue of guilt in a criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial in no way prejudices the accused in a defense based on mental disease or defect excluding responsibility; the finding may not be introduced in evidence on that issue or otherwise be brought to the notice of the jury.

**23.** The court was concerned about the time of the request and stated:

> I wish we'd raised this matter before. I've got 13 jurors out there and they think this system [has] got a broken gear.

After urging by defense counsel that competency was ultimately a legal decision, the court held:

> All right. Then I find no evidence to suggest Mr. Smiloff is other than competent to stand trial. I have no evidence to the contrary.

**24.** AS 12.45.100 states:

> *Determination of mental disease or defect during trial or probation.* (a) No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.
>
> (b) When, after arrest and before the imposition of sentence or before the expiration of any period of probation, the attorney general, the district attorney, or the attorney for the accused has reasonable cause to believe that a person charged with an offense may be presently suffering mental disease or defect or is otherwise so mentally incompetent that he is unable to understand the proceedings against him or properly to assist in his own defense, he may file a motion for a judicial determination of the mental competency of the accused. Upon that motion or upon a similar motion in behalf of the ac-

**25.** *See Bosel v. State*, 398 P.2d 651, 654 n.7 (Alaska 1965).

Great deference is to be accorded defense counsel's assessment in [competency] matters, insofar as he is better able than the trial judge or the prosecutor to assess the defendant's ability to participate in his defense and to understand the nature of the proceedings against him.[26] (footnote omitted)

*Fajeriak* was subsequently distinguished in *McKinney v. State,* 566 P.2d 653, 660, *opinion on rehearing,* 570 P.2d 733 (Alaska 1977). There we stated:

In *Fajeriak,* the defense counsel indicated that his client was competent. Obviously, the same weight need not be given to a defense counsel's assertions of incompetence. An attorney's duty as an advocate will often require him to present those arguments on behalf of his client, and while his opinion is still relevant, it is not determinative.

Thus, the evaluation by defense counsel of the defendant's competency is only of evidentiary value and is not dispositive of the issue.[27]

One of the leading cases in the competency area is *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Robinson had been convicted of murder in the Illinois state court system. The Illinois Supreme Court affirmed the conviction, finding that no competency hearing had been requested, and that the evidence failed to raise sufficient doubt as to Robinson's competency to require the court to conduct a hearing on its own motion. The United States Supreme Court reversed the conviction on Robinson's petition for habeas corpus, concluding that he was constitutionally entitled to a hearing on the issue of the competence to stand trial.[28] The evidence suggested that Robinson had a long history of remarkably irra-

tional behavior. Despite the presence in the record of colloquies between the trial judge and Robinson showing alertness and understanding by Robinson, the Supreme Court held that the evidence entitled Robinson to a competency hearing.

The importance of competency determinations was reiterated by the Supreme Court in *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Drope had been indicted with two others for the forcible rape of his wife. In procedures replete with attorney error and oversight, the case proceeded to trial despite the objection of his counsel that Drope was not of "sound mind" and needed a second psychiatric examination before trial. Midway through trial, Drope attempted suicide; the trial proceeded without him. The Supreme Court avoided the question as to whether the evidence was sufficient to require a competency examination, holding that when the attempted suicide was considered, together with the psychiatric information available before trial and the testimony of Drope's wife at trial, a sufficient doubt as to Drope's competence to stand trial was presented so as to require further inquiry.[29] The Court noted that even when a defendant is competent to stand trial at the beginning of his trial, the trial court must always be alert to circumstances indicating that the accused is no longer competent to stand trial.[30]

In *Hansford v. United States,* 124 U.S. App.D.C. 387, 365 F.2d 920 (1966), the court of appeals also considered the need for redetermination of competency. There, the hospital to which the defendant was sent for narcotics detoxification reported that he was competent to stand trial, and the district court, without a hearing, determined

---

**26.** In *Fajeriak*, at 802, the question was whether the trial court erred in not ordering a psychiatric examination *sua sponte*. The court emphasized the opinion of defense counsel that Fajeriak was competent to stand trial in holding that there was no error.

**27.** *Schade v. State,* 512 P.2d 907, 913 (Alaska 1973). In *Schade,* the counsel felt the defendant was competent as did the examining psychiatrists. The court held that the lower court

did not err in finding Schade competent to stand trial.

**28.** 383 U.S. at 377, 86 S.Ct. at 838, 15 L.Ed.2d at 817–18.

**29.** 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118.

**30.** *Id.* at 181, 95 S.Ct. at 908, 43 L.Ed.2d at 119.

that he was competent. However, the circuit court found a duty on the part of the trial court to conduct a competency hearing during trial where it appeared that the defendant had been using drugs and may have been suffering from acute brain syndrome produced by narcotics during trial. The court stated:

> In the present case, the predictive value of the [h]ospital report and of the initial judicial determination of appellant's competency was vitiated by appellant's resumption of his use of narcotics following his examination. This fact, brought out at trial, should have put the trial court on notice that appellant might then have become incompetent.[31]

From these cases, we conclude that the duty to determine competency is not one that can be once determined and then ignored. Thus, the question becomes one of possible abuse of discretion by the superior court in denying defendant's request for an evidentiary hearing. There are many federal cases decided under 18 U.S.C. § 4244, or on habeas corpus petitions, which hold that where the medical witness has reported that the accused is competent to stand trial the refusal to hold a hearing is not denial of due process.[32] In *Chenault v. Stynchcombe,* 546 F.2d 1191, 1193 (5th Cir.), *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977), the Court of Appeals for the Fifth Circuit noted that three factors should be considered: a history of irrational behavior, defendant's demeanor at trial, and prior medical opinion. Although this court has never laid down specific criteria to be used

in judging incompetence to stand trial, we have noted that memory loss, whether partial or total, is not an adequate ground for a declaration of incompetency.[33] Concerning the question of "understanding," we have stated:

> But this does not mean that a defendant must possess any high degree of legal sophistication or intellectual prowess. In determining competency, the standard of judgment must be a relative one. Some comparison, must be made between the apparent competency of the accused and the ability level of the average criminal defendant. That level of ability is often not great. Numerous persons are subjected to criminal prosecution, and properly so, even though they are of relatively low intelligence or are suffering from some significant emotional or physical impairment. Not every emotional flaw renders one incompetent to stand trial.[34] (footnote omitted)

In the case at bar, we have concluded that the showing made by the defense was not sufficient to trigger the holding of a competency hearing. The main thrust of the trial counsel's showing was the fact that he had encountered difficulties and disagreements with Smiloff over whether to accept a plea bargain and whether to have a jury trial. Defense counsel did not refer to any bizarre behavior on Smiloff's part or any specific facts indicating Smiloff's incompetency. In these particular circumstances, we hold that the superior court did not err in ruling that a fresh competency hearing was not required.[35]

---

**31.** 124 U.S.App.D.C. at 392, 365 F.2d at 925.

**32.** *See, e. g., Chenault v. Stynchcombe,* 546 F.2d 1191 (5th Cir.), *cert. denied,* 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977); *United States v. Kaufman,* 393 F.2d 172 (7th Cir. 1968), *cert. denied,* 393 U.S. 1098, 89 S.Ct. 892, 21 L.Ed.2d 789 (1969); *United States v. Sharp,* 381 F.2d 708 (4th Cir. 1967), *cert. denied,* 390 U.S. 964, 88 S.Ct. 1068, 19 L.Ed.2d 1163 (1968); *United States v. Knohl,* 379 F.2d 427, *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967).

**33.** *Fajeriak v. State, supra,* 520 P.2d at 801. *See also Kostic v. Smedley,* 522 P.2d 535 (Alaska 1974).

**34.** *Schade v. State, supra,* 512 P.2d at 914.

**35.** In our view, the superior court's concern regarding the jury which had been empanelled is particularly inapposite. As *Pate* and *Drope* so clearly illustrate, considerations of judicial economy are not accorded much weight when compared with the need to conduct a competency hearing. What is significant is that the trial court make an independent judicial determination of the accused's competency to stand trial where a sufficient showing is made of facts which point to the necessity of conducting a competency hearing. *See* note, *Incompetency to Stand Trial,* 81 Harv.L.Rev. 454, 470 (1967).

In his final specification of error, Smiloff claims that the superior court erred in failing to give instructions on assault and battery [36] and contributing to the delinquency of a child [37] as lesser included offenses of the crime of lewd or lascivious acts toward children. Defense counsel requested the assault and battery instruction, but did not request the other instruction.[38] The state has asserted that the assault and battery instruction was not requested timely. The record shows during the trial the superior court ordered that respective counsel were to submit requested instructions by Friday morning. On the following Monday morning, just prior to submission of the case to the jury for deliberation, the court and counsel discussed the instructions which the superior court proposed to give to the jury. It was during the conference that Smiloff's counsel, for the first time, requested an instruction concerning the offense of assault and battery on the theory that the offense is a lesser included offense of the lewd and lascivious acts toward a child. At this point in the proceedings, the state objected to this requested instruction on the ground that it was requested untimely. The superior court, in denying the request, based its ruling, in part, on the failure to timely request the instruction.[39]

We think the superior court's ruling was correct in light of Smiloff's untimely request. Criminal Rule 30(a) authorizes the trial court to set a reasonable time for the submission of written requested instructions. In this regard, the rule provides, in part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.

There is no contention made that the time set for the submission of requested instructions by the trial court was unreasonable. The rationale of the above-quoted portion of Criminal Rule 30(a) is to accord the trial court adequate time to consider

**36.** At the time of trial, AS 11.15.230 provided:

A person not armed with a dangerous weapon, who unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, is punishable by a fine of not more than $500, or by imprisonment in a jail for not more than six months, or by both.

**37.** AS 11.40.130 provides:

*Contributing to delinquency of child.* (a) A person who commits an act, or omits the performance of a duty, which causes or tends to cause, encourage or contribute to the delinquency of a child under the age of 18 years, is guilty of a misdemeanor. (b) A person who by threats, command or persuasion endeavors to induce a child under the age of 18 years to perform an act or follow a course of conduct which would cause or manifestly tend to cause him to become or remain delinquent is guilty of a felony, and upon conviction is punishable by imprisonment for not less than one year nor more than two years.

"Delinquent" is defined in AS 11.40.150.

**38.** Alaska Criminal Rule 30 provides:

(a) *Requested Instructions—Objections.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. Additionally, the court in its discretion may give the jury such instructions it deems necessary, at any stage of the trial. The instructions shall be reduced to writing and read to the jury and shall be taken to the jury room by the jury. No party may assign as error any portion of the charge of omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. Opportunity shall be given to make the objection out of the hearing of the jury by excusing the jury or hearing objections in chambers.

(b) *Instructions to Be Given.* The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict.

**39.** THE COURT: I'm not going to give the instructions 5, 6 and 7. I don't think this case warrants it and I don't think assault and battery is a lesser included offense of lewd and lascivious acts. And as I say I've got it at the very last instance.

the requested instructions and to prepare appropriate instructions. This portion of Criminal Rule 30(a) is one of the procedural devices given to the trial courts to enable them to govern trial proceedings. Given the authorization of Criminal Rule 30(a) and its purposes, we conclude that the superior court did not err in refusing to give

Smiloff's untimely requested instruction on assault and battery.[40]

Affirmed.

**40.** Inherent in our holding is the conclusion that the superior court's refusal to give an instruction on the lesser included offense of assault and battery does not constitute plain error.

No request for or objection was made to the superior court's failure to instruct in the assert-

ed lesser included offense of contributing to the delinquency of a child. Since we do not think the superior court's failure to give such an instruction in this factual context was plain error, we do not reach that contention. *See Eliason v. State,* 511 P.2d 1066, 1072 n.22 (Alaska 1973).