NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

STANLY PIENIAZEK,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11866
Trial Court No. 4FA-12-1496 CR

O P I N I O N

No. 2543 — February 24, 2017

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge ALLARD.

Stanly Pieniazek was found competent to stand trial following a competency hearing before Fairbanks Superior Court Judge Michael P. McConahy. A

---

[*]   Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

jury later found Pieniazek guilty of two counts of third-degree assault[1] for shooting a gun at two state troopers after they responded to a report of a disturbance at Pieniazek's property in Fairbanks.

On appeal, Pieniazek argues that the superior court erred in determining that he was competent to stand trial. For the reasons explained here, we agree with Pieniazek that the superior court misapplied the factors listed in AS 12.47.100(e) and failed to conduct an independent and contemporaneous assessment of Pieniazek's competency. Accordingly, we remand Pieniazek's case to the superior court for reconsideration and, if feasible, a retrospective determination of his competency to stand trial.

*Background facts*

Pieniazek, a Polish immigrant with limited English proficiency, is eighty years old. The events that gave rise to this case took place in May 2012, when Pieniazek was seventy-five years old. At the time of the shooting, Pieniazek was living in squalor at his property in Fairbanks in a collection of structures connected by self-constructed "tunnels" that witnesses described as dilapidated and unsanitary. Although Pieniazek was appointed a public guardian[2] two years prior, due to his behavior during a separate criminal case, Pieniazek rebuffed his guardian's attempts to place him in assisted living, and he twice left the facility in which he was placed. The record before the trial court indicated that Pieniazek was employed from 1969 to approximately 1991, when he retired. The record also indicated that although Pieniazek possessed a driver's license as late as 2011, he was last observed driving in February 2010.

_____

[1]   AS 11.41.220.

[2]   AS 13.26.370.

Prior to trial, Pieniazek's attorney filed a motion for a judicial determination of competency. Pieniazek was then evaluated twice: first by clinical psychologist Dr. Siegfried Fink, who concluded that Pieniazek had dementia and was incompetent to stand trial; and later by state forensic psychologist Dr. Lois Michaud, who rejected Fink's diagnosis of dementia and instead concluded that Pieniazek was malingering, based on his refusal to communicate with her.

Fairbanks Superior Court Judge Michael McConahy subsequently held a hearing in May 2013 at which Dr. Fink and Dr. Michaud elaborated on their respective diagnoses. In addition, three other witnesses testified: Ruth Retynski, Pieniazek's public guardian, as well as Fairbanks Correctional Center (FCC) officers Joanne Murrell and Jerry Watson. Murrell and Watson had both dealt extensively with Pieniazek while he was in custody awaiting trial in this case. In relevant part, Retynski, Murrell, and Watson each described a number of Pieniazek's strange behaviors.

Retynski testified that she struggled to find an assisted living facility for Pieniazek, partly because she could not determine whether his behavior was due to mental illness or dementia. But Retynski also testified that Pieniazek was manipulative, and that there were times during her conversations with Pieniazek that she felt he was pretending not to understand her when she "didn't give him exactly what he wanted."

The FCC corrections officers testified that Pieniazek's mental condition was extremely poor during his incarceration: Pieniazek hoarded and ate spoiled food, refused to shower unless "tricked" into doing so, struggled to complete all but the most simple tasks, generally did not communicate with staff or other inmates, and was kept in administrative segregation for the sake of both his and others' safety. Officer Murrell testified that Pieniazek had "moments where he knows what he's talking about ... [and] moments where he's just babbling." She also testified that Pieniazek would sometimes "in the middle of the night ... pack up all his stuff, fold everything up, organize

everything, and just bang on the door and [say] open the door, I'm ready to go home." Dr. Fink also noted in his report that the FCC staff members he interviewed "observed a significant decline in [Pieniazek's] level of functioning especially in the last year."

The trial judge found Pieniazek competent to stand trial, crediting Retynski's and Dr. Michaud's testimony that Pieniazek was sometimes "communicative." The trial judge also noted that AS 12.47.100(e) directs a court determining a defendant's competency to take into account "whether the person has obtained a driver's license, is able to maintain employment, or is competent to testify as a witness under the Alaska Rules of Evidence." The trial judge concluded that these conditions had been met in Pieniazek's case because Pieniazek was "able to maintain employment since he got [to the United States] until his retirement [in 1991]" and that, although Pieniazek did not have a current driver's license, he had a "currently registered vehicle on his property" in 2011 and "gets around."

The trial judge also found it significant that Pieniazek had testified briefly in his own defense in a bench trial for criminal trespass before Fairbanks Superior Court Judge Jane Kauvar that took place two years earlier, in February 2012. Judge McConahy assumed that Judge Kauvar had found Pieniazek competent to testify at that trial.

However, the record indicates that this assumption was incorrect. There were no competency proceedings prior to the 2012 criminal trespass trial, and Judge Kauvar made no explicit finding that Pieniazek was competent to testify. The record also indicates that, although Judge Kauvar may have permitted Pieniazek to testify, Pieniazek's behavior in court was sufficiently unusual that Judge Kauvar herself sought to appoint Retynski as Pieniazek's legal guardian. A review of Pieniazek's trial

testimony in that prior case also reveals that his testimony was extremely brief and largely incoherent, and that Pieniazek appeared confused by the proceedings.[3]

Pieniazek also testified briefly in the current case. In the brief time he was on the stand, he answered his attorney's initial questions in Polish and then answered his attorney's later questions with "I don't know" and silence.

*Alaska law regarding competency determinations*

Under Alaska law, a criminal defendant is incompetent to stand trial if, "as a result of a mental disease or defect ... the defendant is unable to understand the proceedings against the defendant or assist in the defendant's own defense."[4] Alaska Statute 12.47.130(5) defines "mental disease or defect" as "a disorder of thought or mood that substantially impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." The statutory definition further clarifies that "mental disease or defect" also includes "intellectual and developmental

---

[3] At the 2012 criminal trespass trial, Pieniazek stated, through a translator, that he was born in Poland in 1936, but that he could not remember when he moved to the United States, or when he moved to Fairbanks. After many questions went unanswered, Pieniazek could not answer what his house looked like. When his counsel asked him to tell the court what happened, Pieniazek replied "What's supposed to happen?" "I don't know," and "I would like to know when I can leave from here." The court attempted to ask him if he wanted to say anything about what happened and, after the translator asked more questions to understand his answers, he replied "When I'm going to go."

[4] AS 12.47.100(a); *see also* AS 12.47.130(4) ("'[I]ncompetent' means a defendant is unable to understand the proceedings against the defendant or to assist in the defendant's own defense.").

disabilities that result in significantly below average general intellectual functioning that impairs a person's ability to adapt to or cope with the ordinary demands of life."[5]

A defendant who is incompetent may not be tried, convicted, or sentenced so long as his incompetency exists.[6] The conviction of a defendant who is incompetent violates due process of law.[7]

We have previously emphasized that,"[b]ecause the integrity of the judicial proceeding is at stake when the competency of a criminal defendant is in question, a trial court has a duty to order a competency evaluation whenever there is good cause to believe the defendant may be incompetent to stand trial."[8] Moreover, "because a defendant's mental state may deteriorate under the pressures of incarceration or trial, a trial court must be responsive to competency concerns throughout the criminal proceeding."[9]

The standard for determining lack of competency, although originally formulated in judicial decisions, is now codified in AS 12.47.100. This statute provides that "[a] defendant is presumed to be competent" and that "[t]he party raising the issue of competency bears the burden of proving the defendant is incompetent by a

---

[5] AS 12.47.130(5).

[6] AS 12.47.100(a).

[7] *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Diggs v. State*, 274 P.3d 504, 505 (Alaska App. 2012).

[8] *Gamble v. State*, 334 P.3d 714, 717 (Alaska App. 2014) (citing *Leonard v. State*, 658 P.2d 798, 799 (Alaska App. 1983)).

[9] *Gamble*, 334 P.3d at 717 (citing *Smiloff v. State*, 579 P.2d 28, 36 (Alaska 1978); AS 12.47.100(b)).

preponderance of the evidence."[10]  When the court raises the issue of competency, the burden of proving the defendant is incompetent "shall be on the party who elects to advocate for a finding of incompetency."[11]

Alaska Statute 12.47.100(e)-(g) directs the trial court to consider a variety of factors in assessing a defendant's competency to stand trial.[12]  Subsection (e) provides a list of factors that the court is required to consider in determining "whether a person has sufficient intellectual functioning to cope with the ordinary demands of life."  These factors are:

> whether the person has obtained a driver's license, is able to maintain employment, or is competent to testify as a witness under the Alaska Rules of Evidence.[13]

Subsection (f) provides a list of non-exhaustive factors that the court is required to consider in determining "if the defendant is able to understand the proceedings against the defendant."  These factors include:

> whether the defendant understands that the defendant has been charged with a criminal offense and that penalties can be imposed; whether the defendant understands what criminal conduct is being alleged; whether the defendant understands

---

[10]  AS 12.47.100(c).

[11]  *Id.*

[12]  These subsections were added to the competency statute in 1996.  SLA 1996, ch. 62, §1.

[13]  AS 12.47.100(e); *see also* AS 12.47.130(5) ("'[M]ental disease or defect' means a disorder of thought or mood that substantially impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life; 'mental disease or defect' also includes intellectual and developmental disabilities that result in significantly below average general intellectual functioning that impairs a person's ability to adapt to or cope with the ordinary demands of life.").

the roles of the judge, jury, prosecutor, and defense counsel; whether the defendant understands that the defendant will be expected to tell defense counsel the circumstances, to the best of the defendant's ability, surrounding the defendant's activities at the time of the alleged criminal conduct; and whether the defendant can distinguish between a guilty and not guilty plea.[14]

Lastly, subsection (g) provides a list of non-exhaustive factors that the court is required to consider in determining if the defendant is "unable to assist in the defendant's own defense." These factors include:

whether the defendant's mental disease or defect affects the defendant's ability to recall and relate facts pertaining to the defendant's actions at times relevant to the charges and whether the defendant can respond coherently to counsel's questions.[15]

Subsection (g) also provides:

A defendant is able to assist in the defense even though the defendant's memory may be impaired, the defendant refuses to accept a course of action that counsel or the court believes is in the defendant's best interest, or the defendant is unable to suggest a particular strategy or to choose among alternative defenses.[16]

---

[14]  AS 12.47.100(f); *see also* AS 12.47.130(6) ("'[U]nderstand the proceedings against the defendant' means that the defendant's elementary mental process is such that the defendant has a reasonably rational comprehension of the proceedings.").

[15]  AS 12.47.100(g); *see also* AS 12.47.130(2) ("'[A]ssist in the defendant's own defense' means to consult with a lawyer while exercising a reasonable degree of rational functioning.").

[16]  AS 12.47.100(g).

*Why we remand Pieniazek's case for reconsideration*

As explained above, AS 12.47.100(e)-(g) directs a trial court to consider a variety of factors in determining whether a defendant is competent to stand trial.

In this case, however, the trial court focused its analysis almost exclusively on the factors listed in AS 12.47.100(e) and appeared to largely ignore the requirements of subsections (f) and (g). Although the court briefly mentioned the requirements of (f) and (g), it did not appear to undergo any independent analysis of these factors; instead the court primarily deferred to Dr. Michaud's conclusions without much explanation for this deference.[17]

Moreover, when the court evaluated the factors listed in AS 12.47.100(e), it did not evaluate these factors in terms of Pieniazek's *current* ability to function and cope with the ordinary demands of life. Instead, it evaluated these factors exclusively in terms of Pieniazek's ability to function in the past — including, at times, the distant past. For example, the trial court noted that "I don't think anybody is saying that [Pieniazek] currently has an operator license," but the trial court nevertheless found it significant that "it seems clear that he's driven in the past, and [] had a — in 2011 at least, a currently registered vehicle." The trial court also found it significant that Pieniazek "maintain[ed] employment since he got here until his retirement" even though Pieniazek's retirement was in 1991 — more than twenty years before the 2013 competency hearing. Lastly, the trial court found it significant that Pieniazek had testified on his own behalf in a prior criminal trial that took place approximately two years earlier. But, as already noted, the prior trial had not included a competency

---

[17] *See Adams v. State*, 829 P.2d 1201, 1207-08 (Alaska App. 1992) (Bryner, C.J., concurring) (noting that the determination of competency is ultimately a legal matter, not a medical matter, and the superior court's deference to psychologist's opinion amounted to a failure to exercise judicial discretion and constituted an independent ground for reversal).

evaluation. Moreover, Pieniazek's testimony at that prior trial was largely incoherent, and his behavior ultimately resulted in the court appointing him a public guardian.

Taken together, the trial court's remarks indicate that the court misapplied the factors under AS 12.47.100(e) and failed to adequately investigate whether Pieniazek was competent *at the time of trial*, rather than at some point in the past. The record also indicates that the court failed to properly document its consideration of the relevant factors under AS 12.47.100(f)-(g).

As the Alaska Supreme Court has previously cautioned, competency is not a static concept, and the trial court's duty to determine competency is "not one that can be once determined and then ignored."[18] The need to focus on the defendant's current level of functioning was particularly acute in this case, given that there had been a diagnosis of progressive dementia from one expert and witness testimony that Pieniazek's functioning had significantly deteriorated over the last year. But in making its competency finding, the trial court relied primarily on evidence that was too old to be of direct relevance to a contemporaneous assessment of Pieniazek's competency. The trial court also relied on a purported finding of competency from another judge that had not actually occurred. Because of these errors, we conclude that a remand to the superior court for reconsideration of Pieniazek's competency at the time of trial is required.

We recognize that retrospective competency hearings are disfavored under the law, largely because of the inherent difficulties in making such determinations retrospectively.[19] But we believe that this case presents different circumstances than the

---

[18]    *See Smiloff v. State*, 579 P.2d 28, 33-36 (Alaska 1978); *accord Gamble v. State*, 334 P.3d 714, 717 (Alaska App. 2014).

[19]    *See Leonard v. State*, 658 P.2d 798, 800 (Alaska App. 1983) (holding that the only remedy for erroneous denial of competency evaluation is reversal of conviction because of

(continued...)

typical case where a trial court fails to hold a competency hearing or fails to follow the procedural rules for such a hearing.[20] Here, unlike in those cases, a full competency hearing was held, and there was a significant amount of testimony presented from experts and other people with recent interactions with Pieniazek. It therefore may be possible, unlike in most cases, for the superior court to reach a retrospective determination of Pieniazek's then-competency to stand trial based on the current record.[21] However, if the superior court determines that the record is inadequate for a retrospective determination of competency, then the only proper remedy is a new trial preceded by a new competency determination.

---

[19] (...continued)
difficulties associated with retrospective competency determinations); *see also Pate v. Robinson*, 383 U.S. 375, 386-87 (1966) (noting that proper remedy for error in competency determination was a new trial preceded by a new competency determination due to the difficulty of retroactively determining an accused's competence to stand trial); *Dusky v. United States*, 362 U.S. 402, 403 (1960) (per curiam) (concluding that the only way to effectively correct an erroneous determination of competency to stand trial is to reverse the conviction and remand to the district court for a hearing as to competency and for a new trial if the accused should be found competent).

[20] *See, e.g.*, *Leonard*, 658 P.2d at 800 (court failed to hold a competency hearing).

[21] *See, e.g.*, *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001) (holding that retrospective competency hearings are permissible "when the record contains sufficient information upon which to base a reasonable psychiatric judgment" of the defendant's competence); *United States v. Arenburg*, 605 F.3d 164, 171 (2nd Cir. 2010) (remanding for a determination of whether there is sufficient information to allow a meaningful retroactive competency hearing); *see also United States v. Jones*, 336 F.3d 245, 260 (3rd Cir. 2003); *People v. Ary*, 118 Cal. App. 4th 1016, 1029 (Cal. App. 2004); *State v. Hawkins*, 363 P.3d 348, 354 (Idaho 2015).

*Conclusion*

We REMAND this case to the superior court for reconsideration of the defendant's competency on the current record and, if feasible, a retrospective determination of the defendant's competency to stand trial.