JOSEPH GERALD MORROW *v.* STATE OF
MARYLAND

[No. 78, September Term, 1980.]

*Decided December 10, 1980.*

The cause was submitted on briefs to GILBERT, C. J., and
MORTON and THOMPSON, JJ.

Submitted by *George E. Burns, Jr., Assistant Public
Defender,* and *Alan H. Murrell, Public Defender,* for
appellant.

Submitted by *Ray E. Stokes, Assistant Attorney General,*

*Stephen H. Sachs, Attorney General, Sandra A. O'Connor, State's Attorney for Baltimore County,* and *Stephen M. Schenning, Assistant State's Attorney for Baltimore County,* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Joseph Gerald Morrow, the appellant, was convicted by a jury in the Circuit Court for Baltimore County of manslaughter by automobile in the death of John Albert Hughes, Sr. He was sentenced to a term of 15 months, which was later suspended. The appellant raises here the following questions:

> 1. Did the trial court err in ruling that appellant's amnesia did not preclude him from receiving a fair trial?
>
> 2. Did the trial judge err in denying appellant's request for a corrective instruction following the court's misstatement that prosecution witnesses testified as to the manner in which appellant's car was being driven?
>
> 3. Was the evidence sufficient to sustain the conviction of manslaughter by automobile?

## FACTS

At approximately 2:36 a.m. on October 7, 1978, Officer Frank Rongione, Jr. of the Baltimore County Police Department arrived at the scene of an auto accident on Belair Road, a four-lane highway running in a north-south direction. He observed that the collision involved a silver American Motors Pacer hatchback and a white Pontiac LeMans. The Pacer had come to rest facing east in the right lane on the northbound side. The appellant, who was seriously injured, was pinned behind the wheel. The officer testified that he detected the odor of alcohol on the appellant's breath.[1] In the right lane on the opposite side of

---

1. A blood test administered following the collision revealed that appellant had a blood alcohol level of .16 per cent.

the road, facing southwest, was the Pontiac. Trapped in the front seat of that car was a woman identified as Constance Linn. Each vehicle was heavily damaged in front. Officer Rongione also observed the decedent, John Albert Hughes, Sr., who had apparently been thrown from the appellant's car by the impact, lying on the road in the right northbound lane, south of the Pacer. The officer testified that he later determined from gouges in the pavement that the point of impact had been in the left northbound lane.

Officer Rongione read into evidence a statement obtained from the appellant following his arrest 12 days after the accident. In that statement, the appellant stated that he was driving his silver Pacer at approximately 2:25 a.m. on October 7, 1978 on Belair Road. He admitted leaving Pecora's Bar & Restaurant, after consuming three or four rum and cokes, and proceeding south on Belair Road, with John Hughes as a passenger. He also admitted that he had consumed one beer at about 10:30 p.m. that night. The appellant stated that he could not remember what occurred after he left Pecora's.

Calvin M. Cason, along with his wife, was driving north on Belair Road in the right lane at the time of the collision. Ahead of Cason in the left lane was the Pontiac driven by Constance Linn. Cason testified that he saw the silver Pacer, which was southbound, cross over the double center line into the northbound lanes and collide head-on with the northbound Pontiac. The Pacer than struck the curb on the northbound side of the road while the Pontiac came to rest in the southbound lanes.

Several witnesses testified concerning their encounters, immediately prior to the collision, with a car which resembled that driven by appellant. Wayne Dircks testified that he was northbound in the right lane on Belair Road on October 7, 1978, at approximately 2:15 a.m., when he was forced to swerve to the right to avoid a southbound vehicle which crossed over the center line. When he looked in his rearview mirror after the vehicle had passed, Dircks saw smoke or steam. He then turned his car around and observed that a silver Pacer had collided with a white LeMans some

300 or 400 feet south of the point where he had been forced to swerve. Scott Williams, a passenger in the car driven by Dircks, also testified concerning the vehicle which had forced Dircks to swerve, describing it as a small car, silver in color. Neither Williams nor Dircks was certain that the car which forced them to the side of the road was the appellant's Pacer. Judith Gloria testified that, while driving north on Belair Road that morning at approximately 2:10 a.m., she was forced off the road and into a guardrail by a southbound vehicle which came over the center line and into the right northbound lane. She described the vehicle as a light-colored hatchback, "a little bigger than a Pinto." Patricia McKenny recalled that, while traveling south on Belair Road that morning some time after 2:00 a.m., she was passed by a light-colored hatchback which crossed over into the northbound lanes. She testified that the vehicle was exceeding the speed limit.

## I Amnesia

Prior to trial, a hearing was held to determine whether the appellant was competent to stand trial. He claimed that he suffered amnesia as a result of the head injuries which he sustained in the collision. At the hearing, he produced a psychiatrist, Dr. Chester Schmitt, Jr., who testified that the appellant "had findings that were consistent with post-traumatic amnesia, that is, amnesia that follows head injury." Dr. Schmitt stated that the appellant had reported that he had no memory of events occurring between the time he left Pecora's Restaurant and the time he regained consciousness in the hospital later that morning. According to Dr. Schmitt, the appellant claimed that the police had been the source of the information contained in the statement he made 12 days after the collision. The doctor testified that the appellant understood the nature of the proceedings against him; he further agreed that the appellant would be able to consult with his attorney in the same manner as would any other defendant, except that he would be unable to answer questions concerning events

which occurred during the period of memory loss. The trial court held that the appellant was competent to stand trial despite the amnesia. We agree.

An accused is incompetent to stand trial if he "is unable to understand the nature of the object of the proceeding against him or to assist in his defense." Md. Ann. Code art. 59, § 23 (1979 Repl. Vol., 1980 Cum. Supp.). The Court of Appeals has held that this requires "that not only must the accused have 'a rational as well as factual understanding of the proceedings against him' but also he must at the trial have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Raithel v. State,* 280 Md. 291, 298, 372 A.2d 1069 (1977).[2] In the instant case, the appellant's ability to understand the proceedings is undisputed; the issue is whether his amnesia rendered him incapable of assisting in his defense.

This issue is one of first impression in Maryland, *cf., James v. State,* 31 Md. App. 666, 688 n.9, 358 A.2d 595, *cert. denied,* 278 Md. 725 (1976);[3] it has however been addressed by the courts in numerous other jurisdictions. *See, e.g., United States v. Swanson,* 572 F.2d 523 (5th Cir.), *cert. denied,* 439 U.S. 849 (1978); *United States ex rel. Parson v. Anderson,* 481 F.2d 94 (3d Cir.), *cert. denied,* 414 U.S. 1072 (1973); *United States v. Borum,* 464 F.2d 896 (10th Cir. 1972); *United States v. Stevens,* 461 F.2d 317 (7th Cir.), *cert. denied,* 409 U.S. 948 (1972); *United States v. Sullivan,* 406 F.2d 180 (2d Cir. 1969); *Wilson v. United States,* 129 U.S. App. D.C. 107, 391 F.2d 460 (1968); *Fajeriak v. State,* 520 P.2d 795 (Alas. 1974); *State v. McClendon,* 437 P.2d 421 (Ariz. 1968); *Reagon v. State,* 251 N.E.2d 829 (Ind. 1969); *State v. Pugh,* 283 A.2d 537 (N.J. Super. 1971);

---

**2.** The Court of Appeals quoted Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), where the Supreme Court interpreted 18 U.S.C. § 4244. The language contained in 18 U.S.C. § 4244 and in art. 59, § 23 is "virtually identical." Raithel v. State, *supra* at 298.

**3.** Although we stated in James that "Amnesia *per se* does not bar prosecution," 31 Md. App. at 688 n.9, we found that "the clear indication of the jury's verdict was that no amnesia in fact existed." *Id.* at 689. Therefore, we did not reach the issue presented here, where the genuineness of the appellant's amnesia has not been disputed.

*Commonwealth v. Price,* 218 A.2d 758 (Pa.), *cert. denied,* 385 U.S. 869 (1966); *Jackson v. State,* 548 S.W.2d 685 (Tx. Crim. App. 1977). *See, generally,* Annot., 46 A.L.R.3d 544 (1972).

Although "there are no definitive judicial explanations" of what constitutes the ability to assist in one's own defense, 27 Md. L. Rev. 182, 186 (1967), it is clear that the cases without exception reject the notion that an accused possesses that ability only if he is able to remember the circumstances of the crime with which he is charged. *See, Jackson v. State, supra* at 691: ("We find no case yet reported which has held that the inability to recall the event charged because of amnesia constitutes mental incapacity to stand trial.") Amnesia does not prevent an accused from exercising "his rights under the Sixth and Fourteenth Amendments: his right to challenge jurors, to be informed of the nature and cause of the accusation, to confront the witnesses against him, to summon witnesses in his favor and to have the assistance of counsel." *United States ex rel. Parson v. Anderson,* 354 F. Supp. 1060, 1071 (D. Del. 1972), *aff'd,* 481 F.2d 94 (1973). "[A]mnesia [does] not cause the accused to lie to his counsel, intentionally to hold out facts or hinder his defense; nor [does] it prevent him from understanding the nature of the oath, from truthfully answering all questions put to him on the stand, from answering questions rationally, or from comprehending the elements of the offenses with which he [is] charged and the facts set forth in the charges and specifications." *Amnesia: A Case Study in the Limits of Particular Justice,* 71 Yale L.J. 109, 121 (1961). Amnesia does not prevent an accused from rationally discussing his defense with counsel, nor from making rational decisions with respect to his defense. Indeed, the amnesic defendant is "denied only the ability to testify personally to certain facts, and this is a disability shared in greater or lesser degree by all defendants as a result of the normal attrition of memory or the lack of opportunity to observe important facts." *Id.* at 121.

The practical effects of expanding the definition of incompetency to include amnesia must be considered. Several courts have indicated that they were unwilling to

hold that limited amnesia was an adequate ground for a determination of incompetency because the effect of such a holding would be to free, without trial, persons against whom prima facie criminal cases had been established. *See, State v. Johnson,* 536 P.2d 1035, 1036 (Ariz. 1975); *Commonwealth v. Price,* 218 A.2d at 763. It has been noted that, if amnesia were held to render an accused incompetent then, if the amnesia were permanent, the accused would never be competent and could never be tried: at the same time, because limited amnesia cannot be considered a mental defect or disease, an amnesic accused could not be hospitalized or institutionalized. *See, Commonwealth v. Price,* 218 A.2d at 763. Thus permanent amnesia as to the circumstances of the crime charged would be a permanent bar to the imposition of criminal responsibility. This is especially significant in light of "the extreme difficulty — often impossibility — of distinguishing real from feigned amnesia." 71 Yale L.J. at 123. It has been noted that "an attempt to verify all but the most patently phoney claims of amnesia is at best a difficult and time-consuming task; at worst it is a hopeless one." *Id.* at 124.[4] It was these facts which led the Alaska Supreme Court to state that "policy conjoins with precedent to oppose an expansion of the doctrine of incompetency to include amnesia. The potential for fraudulent allegations of memory loss is so great that we would for this reason alone be reluctant to follow amnesia as a ground for a finding of incompetency even if we were otherwise inclined to do so." *Fajeriak v. State,* 520 P.2d at 802.

Turning to the instant case, at the time of his trial, the appellant was admittedly normal except for his amnesia. The expert witness agreed that the appellant was able to communicate in a normal manner with his attorney, except that he was unable to state from personal knowledge how the collision occurred. We find that the appellant's claimed disability did not render him unable to assist in his defense

---

4. We note that, in the case at bar, the psychiatrist was unable to confirm or deny the genuineness of the appellant's claim of amnesia: he could only conclude that appellant "had findings that were consistent with" a claim of amnesia.

and he was not, therefore, incompetent to stand trial. We agree with the holding in *State v. Pugh,* 283 A.2d at 542: "Amnesia concerning the crime does not render a defendant unable ... to consult intelligently with counsel in the preparation of his defense."

The appellant also contends that his amnesia precluded him from receiving a fair trial. We cannot agree.

As "the fundamental fairness of trying an amnesiac defendant may vary depending on the crime and the circumstances surrounding the claimed loss of memory, ... the propriety of trying an amnesiac defendant is a question to be determined according to the circumstances of each individual case." (Footnote omitted). *United States v. Swanson,* 571 F.2d at 526. While it is of course not determinative of the question in the case at bar, we believe it is significant that in no case yet reported has it been held that an accused's amnesia precluded a fair trial, i.e., constituted a denial of due process of law. *See, e.g., United States v. Swanson, supra; United States v. Sullivan, supra; Jackson v. State, supra. Cf., Wilson v. United States, supra* (case remanded for more extensive post-trial findings concerning effect of accused's amnesia on fairness of trial); *State v. McClendon,* 419 P.2d 69 (Ariz. 1966) (case remanded for determination of whether reasonable continuance and treatment would permit accused to recover memory).

There have been a number of cases involving facts and contentions very similar to those in the instant case. We find persuasive the decision in *Reagon v. State, supra,* where the defendant was convicted of reckless homicide, manslaughter, and driving while intoxicated following a head-on collision caused by his attempt to pass another car while his vision was obstructed. Like the appellant, the defendant there suffered head injuries in the collision and claimed that he was unable to remember the facts relative to the accident. The court rejected his contention that he should not be tried, stating:

> "Many times in a trial of a criminal case evidence is lost, a material witness dies, or, as in this case,

the defendant has amnesia as to certain events or a time. Still, such handicaps from a defendant's point of view cannot prevent a trial from taking place eventually. Rarely would we find a case in which a defendant could not contend that he was deprived of some evidence and therefore he ought not to be tried. However, evidence which is never to be obtained because of the death of witnesses cannot prevent a criminal trial from taking place, and that must be said from the state's point of view as well as that of the defendant." *Id.* at 831.

We note also the comment made by Judge Leventhal in his concurring opinion in *Wilson v. United States,* 391 F.2d at 465: "It is probably commonplace for a man to be convicted of negligent homicide although in fact his memory of the event is vitiated by drink, shock, or both, and I see nothing unconscionable in this."

In the instant case, we find nothing to indicate that the appellant's amnesia precluded a fair trial. As noted above, defendants are often tried under circumstances where less than all of the relevant facts are available. Witnesses die, witnesses forget, documents are destroyed or lost; nevertheless the courts must administer justice based on that evidence which is available. The evidence in this case is overwhelming. This is not an instance where the facts suggest the possibility of an alibi or other defense which has been locked away by the appellant's loss of memory. The appellant was provided with a list of witnesses to the collision; he had the same opportunity as did the State to interview, examine and cross-examine these witnesses. We find that, under these circumstances, the appellant's amnesia did not preclude him from receiving a fair trial.

## II Instructions

During the course of his instructions to the jury, the trial judge stated:

"You may also consider the manner of driving, to

wit, you have heard descriptions of how the Pacer
was being operated, and you may consider its course
southerly on the Belair Road. You may consider the
testimony of such witnesses as Judith Gloria and
Wayne Dircks, who were in cars that encountered
the Pacer prior to the accident between the Pacer
and the 1970 LeMans, driven by Constance Linn."

After the instructions were completed, the following
colloquy occurred:

"[Defense counsel]: Your Honor, may I take
exceptions to them, please, to two of the
instructions?

The Court: I will let you read them into the record
afterwards.

[Defense counsel]: That will be fine, Your Honor.

The Court: All right. You can protect your record
in that event, but I am sure everything I said was
Horn Book.

[Defense counsel]: All right. Thank you, Your
Honor.

The Court: Hold on a minute. Wait a minute. I
want to be sure I didn't miss anything that was —

[Defense counsel]: Your Honor, the one I had in
mind was the presumption instruction. I didn't hear
that. Then I had one other, which I will be glad to
save until after argument."

The "presumption instruction" to which the defense
counsel referred was an instruction that the appellant was
to be presumed innocent, which the court below had in fact
given. The exception which defense counsel chose to "save"
until after the jury retired was as follows:

"[Defense counsel]: I would take exception to the
Court's instruction relating to Judith Mae Gloria
and Constance Linn and any others to the effect
that they testified as to how Mr. Morrow's car was
being driven prior to the accident, and they did not

testify that the automobile was Mr. Morrow's and were barely able to identify the automobile, at all, and, therefore, I request an instruction to the effect that they were unable to identify Mr. Morrow's automobile as the automobile which was involved in the accident, and, therefore, the jury cannot conclude from their testimony that the same automobile they saw was Mr. Morrow's automobile."

Our review of the transcript indicates that the appellant's counsel was correct in his exception: the trial judge was mistaken when he stated that Judith Gloria and Wayne Dircks had testified that they had encountered the Pacer involved in the accident. Neither Gloria nor Dircks was certain whether the vehicle which forced them off the road was the same vehicle which was involved in the fatal collision.

However, Md. Rule 757 f provides as follows:

"If a party has an objection to any instructions, to any omission therefrom, or to the failure to give an instruction *he shall make the objection* on the record *before the jury retires* to consider its verdict and shall state distinctly the matter or omission, or failure to instruct to which he objects and the grounds of his objection. Upon request of any party, the court shall receive objections out of the hearing of the jury." (emphasis added).

As this Court stated in *Vernon v. State,* 12 Md. App. 157, 163, 277 A.2d 635 (1971), "It is clear that the purpose and design of the rule is to correct errors while the opportunity to correct them still exists. Only thus is an error preserved for appellate review." In the instant case, the effect of defense counsel "sav[ing]" his exception was to deny the trial court the opportunity to correct the erroneous instruction, and thus the point has not been preserved for our review. *See also, Bruce v. State,* 218 Md. 87, 145 A.2d 428 (1958); *Sine v. State,* 40 Md. App. 628, 394 A.2d 1206 (1978), *cert. denied,* 284 Md. 748 (1979).

### III Sufficiency of the Evidence

Appellant argues that the evidence summarized above was insufficient to support his conviction. We think the argument is so devoid of merit that we decline to discuss it.

*Judgment affirmed.*
*Appellant to pay the costs.*