## JOSEPH GERALD MORROW v. STATE OF MARYLAND

[No. 6, September Term, 1981.]

*Decided April 2, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with

whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

The primary reason for granting certiorari in this case was to address a question of first impression in Maryland: Whether an accused's loss of memory regarding the facts of the event for which he is charged renders him incompetent to stand trial?

The details giving rise to this issue are as follows. On October 7, 1978 at approximately 2:20 a.m., Joseph Morrow was driving an AMC Pacer southbound on Belair Road where he collided head-on with a Pontiac LeMans being operated by Constance Linn, who was northbound on the same highway. Morrow and Linn suffered extensive injuries as a result of the impact and John Hughes, Sr., a passenger in Morrow's vehicle, was thrown from the car and killed. Morrow was charged with manslaughter by automobile, driving while intoxicated, and driving while ability impaired.[1] Prior to trial Morrow alleged that he was unable to remember anything about the accident and that, as a result, he was incompetent to stand trial.

The trial court conducted a competency hearing at which Morrow produced Dr. Chester Schmidt, Jr., a psychiatrist, who testified that he had examined Morrow and concluded that Morrow suffered from amnesia, a loss of memory. Dr. Schmidt further testified that the period over which Morrow had no recall was just before he left Pecora's Restaurant in the early morning of October 7, 1978, until he awoke in a hospital intensive care unit that morning; that the amnesia resulted from a severe head injury received during that

---

[1]. Morrow was also charged with reckless driving, failure to keep right of center, and failure to reduce speed to avoid a collision. These charges were dropped before trial, however.

time; and that the amnesia was genuine and permanent in that Morrow would never recall the events that took place during this period. Dr. Schmidt indicated that Morrow had information about certain events that occurred during the critical period but that it was the product of information the police and other people had supplied to him. He concluded by testifying that Morrow had fully recovered from the accident, could understand the proceedings, and would be able to consult with counsel the same as any normal individual, except that Morrow would be unable to answer counsel's questions with regard to what happened before, during, and after the accident up until the time he was in the operating room. The trial judge ruled that Morrow was competent to stand trial.

A jury trial followed where the State adduced testimony from several witnesses. Judith Gloria, Scott Williams, and Wayne Dircks testified that they had seen a car driving erratically southbound on Belair Road a few minutes before the accident. Calvin Cason testified that he was driving northbound on Belair Road and saw Morrow's vehicle cross the center line and strike the Linn vehicle head-on. Officer Frank Rongione of the Baltimore County Police Department investigated the accident and told the court he detected an odor of alcohol on Morrow's breath and that a subsequent blood test revealed Morrow's blood alcohol level to be .16 percent.

The jury returned a guilty verdict on the count of manslaughter by automobile and not guilty verdicts on the counts of driving while intoxicated and driving while ability impaired. Morrow was sentenced to fifteen months with the Division of Correction which was later modified to eighteen months of supervised probation. The Court of Special Appeals affirmed the conviction in *Morrow v. State,* 47 Md. App. 296, 423 A.2d 251 (1980), holding, *inter alia,* that Morrow was competent to stand trial.

Morrow contends that he was unable to assist in his defense and, therefore, it was error for the trial court to allow him to stand trial. The State's retort is that amnesia, by itself, does not render an accused incompetent; that if the

accused at the time of trial has the present ability to understand the proceedings against him, to communicate with his lawyer, and, generally, to conduct his defense in a rational manner, then, absent extraordinary circumstances not present here, memory or want thereof is irrelevant to the issue of competency.

The right of an accused to be mentally competent at the time of trial is embodied in Maryland Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.), Article 59, § 23. In pertinent part this statute provides that:

> Whenever prior to or during the trial, any person charged with the commission of any crime shall appear to the court, or be alleged to be incompetent to stand trial, by the defendant himself, the court shall determine upon testimony and evidence presented on the record whether [(1)] such person is unable to understand the nature of the object of the proceedings against him or [(2)] to assist in his defense. . . .
>
> * * *
>
> The court may in its discretion at any time during the trial and until the verdict is rendered, reconsider the question of the competency of the defendant to stand trial as otherwise provided in this section.

In *Raithel v. State,* 280 Md. 291, 372 A.2d 1069 (1977), we held that the extension of this protection "requires, at a minimum, that the defendant be sufficiently coherent to provide his counsel with information necessary or relevant to constructing a defense" and that "both [requirements of the competency test as set forth in the statute] must be established before the accused alleging incompetency can be brought to trial." 280 Md. at 297.

Morrow does not argue for a rule that amnesia as to the facts of the crime renders a person incompetent *per se.* Indeed, he should not for the authorities are agreed in

rejecting such a rule. No court, having considered this issue, has so held. *See* Comment, *Amnesia, a Case Study in the Limits of Particular Justice,* 71 Yale L.J. 109 (1961). *See also, United States v. Swanson,* 572 F.2d 523, 526 (5th Cir. 1978). Rather, Morrow relies on *Wilson v. United States,* 129 U.S. App. D.C. 107, 391 F.2d 460 (1981). He advocates that this Court adopt the procedure enunciated in that case and, if adopted, he would be found incompetent. Several jurisdictions have followed the *Wilson* approach and a discussion of that case is appropriate here.

In *Wilson,* the defendant in a robbery case ran the car he was driving into a tree during a high speed chase, fracturing his skull and rupturing several blood vessels in his brain. He remained unconscious for three weeks. The trial court found he had a permanent loss of memory but nevertheless ordered him to be tried on the assumption that his counsel could secure from other sources the same information regarding the incident that the defendant could have supplied if he possessed the power to recall. The three judge panel reviewing his conviction remanded the case for a post-trial hearing to determine whether the defendant's amnesia did in fact deprive him of a fair trial and the effective assistance of counsel. The majority opinion of the *Wilson* Court said that while the trial court should decide the question of competency before trial, he should nevertheless determine after the trial and before sentencing if, as a matter of fact, the defendant was able to perform these functions which are essential to the fairness and accuracy of a criminal proceeding. In making this determination, the trial court should consider certain factors:

(1) The extent to which the amnesia affected the defendant's ability to consult with and assist his lawyer.

(2) The extent to which the amnesia affected the defendant's ability to testify in his own behalf.

(3) The extent to which the evidence in suit could be extrinsically reconstructed in view of the defendant's amnesia. Such evidence would

include evidence relating to the crime itself as well as any reasonably possible alibi.

(4) The extent to which the Government assisted the defendant and his counsel in that reconstruction.

(5) The strength of the prosecution's case. Most important here will be whether the Government's case is such as to negate all reasonable hypotheses of innocence. If there is any substantial possibility that the accused could, but for his amnesia, establish an alibi or other defense, it should be presumed that he would have been able to do so.

(6) Any other facts and circumstances which would indicate whether or not the defendant had a fair trial. [*Id.* at 463-464.]

In a concurring opinion, a second judge concluded that a fair trial had been conducted despite the amnesia and said that amnesia would be prejudicial only if it could reasonably be concluded that memory would have afforded the defendant an opportunity to present a defense otherwise precluded.

The third judge dissented, believing that memory was an essential element, *per se,* of competency to stand trial.

The bottom line of *Wilson* is that it advocated that competency to stand trial was an issue which could only be determined on a case-by-case basis applying the stated factors. *See Parson v. State,* 275 A.2d 777 (Del. Supr. 1971) (adopting the six factor approach). For cases applying a case-by-case approach *see Aldridge v. State,* 247 Ga. 142, 274 S.E.2d 525 (1981); *Commonwealth v. Lombardi,* 378 Mass. 612, 393 N.E.2d 346 (1979); *People v. Francabandera,* 33 N.Y.2d 429, 354 N.Y.S.2d 609, 310 N.E.2d 292 (1964); *Jackson v. State,* 548 S.W.2d 685 (Tex. Crim. App. 1977).

The State, while recognizing this line of cases, emphasizes that this Court should initially follow the weight of authority and hold that amnesia, by itself, does not render an

accused incompetent to stand trial. It cites as seminal authority for this proposition the English Court of Appeals case of *Regina v. Podola,* 1 Q.B. 325 (1959), which held that an amnesiac defendant is competent to stand trial if he is

> mentally normal at the time of the hearing of the proceeding against [him], and is perfectly capable of instructing [his] solicitors as to what submissions their counsel is to put forward with regard to the commission of the crime. [Id. at 356.]

The rationale the State posits as the capstone for this position is that the amnesiac defendant is no worse off than the defendant who cannot remember where he was on a particular day because of the passage of time, or because he was drunk, drugged, unconscious, or asleep. In each of these circumstances, the State contends, the defendant's defenses may be limited or impaired because of his inability to recall and, thus, a loss of memory would not be a sufficient reason to stop the adjudicatory process. Having gone this far, however, the State does not recommend that this Court adopt a rule that amnesia can never support a finding of incompetency. Rather, the State encourages us to accept and weigh three factors: (1) the strength of the State's case; (2) the nature of the crime; and (3) the existence of circumstances indicating the likelihood of a valid defense, keeping in mind that only when a defendant's loss of memory severely obscures the search for truth should an accused be deemed incompetent as a result of his amnesia.

We decline to accept Morrow's invitation to follow a case-by-case approach. Nor are we disposed to follow the State's reasoning *in toto.* It is our opinion that those courts which hold that amnesia, by itself, as to the events of the crime charged, does not justify a finding of incompetence, represent the better reasoned approach, and we so hold.

One case in line with the conclusion we have reached that bears a close resemblance to the case *sub judice* is *Reagon v. State,* 253 Ind. 143, 251 N.E.2d 829 (1969), *cert. denied,* 397 U.S. 1042, 90 S. Ct. 1364, 25 L. Ed. 2d 653 (1970).

In *Reagon,* a defendant was charged with reckless homicide, manslaughter, and driving while intoxicated after being involved in an accident in which he sustained a head injury and resultant loss of memory. The court found the defendant mentally normal in every respect except his amnesia. The question before the court was whether the defendant was entitled to a continuance to see if his memory would return. The court declined to grant the continuance, reasoning that

> [m]any times in a trial of a criminal case evidence is lost, a material witness dies, or, as in this case, the defendant has amnesia as to certain events or a time. Still, such handicaps from a defendant's point of view cannot prevent a trial from taking place eventually. Rarely would we find a case in which a defendant could not contend that he was deprived of some evidence and therefore he ought not to be tried. [251 N.E.2d at 831.]

Other courts addressing this question have come to the same conclusion, expressing a variety of reasons: everyone is amnesic to some degree, as the passage of time erodes memory, *State v. Willard,* 292 N.C. 567, 234 S.E.2d 587 (1977); *State v. McClendon,* 103 Ariz. 105, 437 P.2d 421 (1968); the practical effect of amnesia is the same as being alone in bed at the time of the crime, *Fajeriak v. State,* 520 P.2d 795 (Alas. 1974), or memory loss from drunkenness or drugs, *State v. Willard, supra.* Another consideration is the potential for fraud which inheres in a claim of amnesia. *See Fajeriak v. State, supra; State v. Pugh,* 117 N.J. Super. 26, 283 A.2d 537 (1971); *State v. McClendon, supra.* Perhaps the most eloquent expression of this position was made in the case study in 71 Yale L.J., *supra,* at 136:

> Once it is recognized that amnesia is present to some degree in everyone and that its effects on the ability of an individual to assist in his own defense are often hard to distinguish from the disadvantages of many defendants to whom important facts are unavailable for reasons other than

amnesia, it should be apparent that it is neither
necessary nor appropriate to consider memory
failure as a sufficient condition for the interruption
of the adjudicatory process to minimize the danger
of a miscarriage of justice. The special demands of
extraordinary cases should, where possible, be met
without losing sight of the fact that a generally
effective system of criminal adjudication has been
developed around rules of evidence and procedure
calculated to insure a workable balance of the inter-
ests of the accused, the prosecution, and the court.

For the above reasons we decline to follow those jurisdictions
that have enunciated a case-by-case approach.

In our view, Art. 59, § 23 is a model of clarity. It requires
the trial court *prior to or during the trial,* when the issue is
raised, to determine if the defendant is able *to understand
the nature of the object of the proceedings against him or to
assist in his defense.* If the trial court determines that the
defendant meets these two prerequisites, a trial follows. We
recognized in *Raithel v. State, supra,* that the Maryland
statute is virtually identical with the federal standard which
was explained and enunciated in *Dusky v. United States,*
362 U.S. 402, 80 S. Ct. 788, 41 L. Ed. 2d 284 (1960) by the
Supreme Court to be

> whether [the accused] has sufficient present abil-
> ity to consult with his lawyer with a reasonable
> degree of rational understanding — and whether he
> has a rational as well as factual understanding of
> the proceedings against him. [Id. at 402.]

The thrust of defense counsel's argument seems to be that if
the defendant has no recall of the events surrounding the
crime then he has no rational or factual understanding so as
to assist his counsel. We are not so persuaded. In our view
the understanding required is the nature of the charge, the
facts required to be proved to sustain the charge, and the
consequences attending a conviction for having committed
the charge. Amnesia does not inhibit dialogue and dis-

cussion between attorney and client as to tactical decisions concerning the trial. Nor does ordering an amnesic defendant to trial, in itself, result in an unfair trial.

We agree with the State that incompetency and fairness of the trial are separate issues. Art. 59, § 23 recognizes this, as it vests the trial court with discretion at any time *during the trial and until the verdict to reconsider* the competency of the defendant. Thus, our holding that amnesia, by itself, does not amount to incompetency insures the integrity of the judicial process in that all such defendants will be tried. The responsibility rests upon the trial court to determine whether due process has been afforded the defendant during the trial.

In the instant case the trial court completely complied with the requirements of Article 59, § 23 and the mandates of due process. When Morrow alleged he was incompetent the court conducted a pretrial hearing on the matter, where expert testimony was heard to the effect that despite his amnesia, Morrow was able to understand the proceedings against him and presently capable of assisting in his own defense. The trial court correctly applied the two part test of competency and ordered that Morrow be compelled to stand trial.

At the trial the State adduced overwhelming evidence of Morrow's presence at the scene of the crime and his complicity in the offense. He was observed driving erratically just prior to the accident; an eyewitness saw Morrow leave his lane of traffic and cross into the oncoming lane where he struck another vehicle; a blood test revealed that he had a blood alcohol level of .16 percent. The accident was reconstructed before the eyes of the fact finder and there is nothing in the record to suggest that Morrow was not afforded full access, prior to trial, to information used by the State. It, therefore, cannot be said that Morrow's amnesia thwarted the accuracy of the fact finding process. We see no basis to Morrow's contention that he was denied a fair trial.

As a final issue, Morrow contends that the trial judge gave

an erroneous instruction to the jury which prevented him from receiving a fair trial. At the close of the evidence the judge told the jury:

> You may also consider the manner of driving, to wit, you have heard descriptions of how the Pacer was being operated, and you may consider its course southerly on the Belair Road. You may consider the testimony of such witnesses as Judith Gloria and Wayne Dircks, who were in cars that encountered the Pacer prior to the accident between the Pacer and the 1970 LeMans, driven by Constance Linn.

The testimony of Gloria and Dircks was that they could not identify the car they saw as being Morrow's Pacer.

Morrow's attorney objected to this and another instruction at the end of the judge's instructions. The judge told defense counsel he could read his exceptions into the record afterwards, then said:

> THE COURT: Hold on a minute. Wait a minute. I want to be sure I didn't miss anything that was —
>
> MR. GREENWALD: Your Honor, the one I had in mind was the presumption instruction. I didn't hear that. Then I had one other, *which I will be glad to save until after argument.*
>
> THE COURT: Which presumption are you talking about?
>
> MR. GREENWALD: The presumption of innocence.
>
> THE COURT: I said the man's presumed to be innocent when this man walks in here, and this jury's got to be convinced beyond a reasonable doubt. I think I made that as clear and forceful as I can.
>
> MR. GREENWALD: If you did, I must have missed it, Your Honor. Thank you.
>
> THE COURT: You must have missed it because I said when he walks in here he's presumed innocent. Everything's up to the State. They've got to convince you. [Emphasis supplied.]

Defense counsel did not propose his second exception at this point and the parties went on to give their closing arguments to the jury. At the end of closing arguments and after the jury had retired defense counsel noted his second exception to the judge's assumption of a controverted fact, *i.e.,* that the car Dircks and Gloria saw was Morrow's Pacer.

The record clearly reflects that defense counsel had ample opportunity to interject his objection in timely fashion. Maryland Rule 757 h provides that an objection to a jury instruction shall be made "before the jury retires . . . and shall state the matter or omission . . . to which [counsel] objects." Morrow's objection did not conform to the requirements of Rule 757 h and is therefore barred from appellate review.

*Judgment affirmed; appellant to pay costs.*