**STATE of Delaware**

v.

**Thomas B. WYNN, Defendant.**

Superior Court of Delaware,
New Castle County.
Submitted: Dec. 20, 1984.
Decided: Feb. 22, 1985.

Christopher J. Curtin, Deputy Atty. Gen., Dept. of Justice, for the State.

Clifford B. Hearn, Jr., Wilmington, for defendant.

O'HARA, Judge.

On September 14, 1983, Thomas B. Wynn ("defendant") was indicted on two counts of Attempted Murder in the First Degree, in violation of 11 *Del.C.* §§ 531 and 636, and one count of Possession of a Deadly Weapon During the Commission of a Felony, in violation of 11 *Del.C.* § 1447. The indictment charges that defendant attempted to murder his wife on May 11, 1983, by placing capsules of Drano among capsules of her prescription drug, and again on August 7, 1983, by shooting her in the back of the neck while she was sleeping.

Following the August 17 incident, defendant gave a taped statement to the Newark police, confessing to the crimes. At the present time, however, defendant maintains his innocence. While he contends that the person on the tape does not sound like him, defendant suggests that if it is him, he must have been drugged by the police. Defendant insists that the police were anxious to "clear the books", and in their zeal, "set [him] up." He maintains that "God is on [his] ... side", and eventually will secure his acquittal.

In March, 1984, defendant retained Dr. Cono Galliani, a licensed psychologist, to determine whether defendant lacked the "requisite mental capacity" at the time of the alleged offenses and at the time of his statement to police; and to determine whether defendant could participate in his defense. After meeting with defendant on two separate occasions during March, Dr. Galliani concluded that defendant was aware of what he was doing at the time of

the alleged offenses and at the time of his statement to police. He also concluded that defendant has a factual understanding of the charges and a rational understanding of the proceedings against him.

With respect to defendant's ability to assist counsel, however, Dr. Galliani reported that:

I believe he [defendant] *cannot* assist counsel in preparing a defense. His apparently vehement belief that he was not the one interviewed by ... [the police], that it is not his voice on the tape, or that, if it is his voice, he, therefore, must have been drugged by the police to clear the record is tantamount to a delusional system which could seriously hamper his rational involvement ...

The delusional system apparently served the purpose of exonerating himself [sic] from morally unacceptable acts. Basically, he perceives himself to be an extremely religious individual—"a disciple of God"—and he believes further ... that he is being put through an ordeal ... "a trial and tribulation to test (him)." ... After the "confession," and, quite possibly, upon further (religious) meditation, the confession was (delusionally) eradicated from his "mind," but. in order for the incident to make sense, the events were reconstructed—at an unconscious level—through a delusion.

Dr. Galliani considered, but rejected, the possibility that defendant is malingering. He based his opinion on the fact that defendant is "not especially intellectually astute", and on the fact that psychological testing of defendant indicated a chronic state of maladjustment.

In response to Dr. Galliani's report, the State moved for a mental examination of defendant. The Court granted the motion, and on two separate occasions during May, 1984, defendant was interviewed by Dr. Kutas Dogan, a psychiatrist at the Delaware State Hospital. Dr. Dogan reported that she could not offer a precise opinion regarding defendant's mental capacity at the time of the alleged offenses without further evaluation, although she did report that, judging from defendant's statement to police, it appears that he was generally in contact with his surroundings, whereabouts, and actions at the time of the alleged offenses. Like Dr. Galliani, Dr. Dogan concluded that the defendant understood what he was doing at the time of his statement to police. Dr. Dogan similarly concluded that while defendant has a basic understanding of court proceedings generally and of the nature of the charges against him, his "paranoid and delusional ideas [i.e., that he was "set-up", God is on his side, and God will secure his acquittal] are of a sufficient severity to impair his capacity to relate to his attorney in a rational manner and to advise his attorney adequately in preparation of an effective defense." [1]

Both the State and the defense have submitted memoranda on the issue of defendant's competency to stand trial at the present time. In addition, a hearing was held on November 13, and 14, 1984, at which Drs. Galliani and Dogan were the sole witnesses.

Based on the findings of Drs. Galliani and Dogan, defendant argues that he suffers from a mental illness or mental defect (a delusion) which renders him incapable of assisting counsel in the preparation of his defense, see 11 *Del.C.* § 404(a),[2] and therefore, incompetent to stand trial. The State,

---

**1.** Dr. Dogan also saw defendant briefly on August 30, 1984. Following that encounter, she reported that "[t]he only thing I can state about Mr. Wynn at this time with certainty is that he is not competent to stand trial."

**2.** Title 11, Section 404(a) of the Delaware Code provides, in relevant part, that:

"[w]henever the court is satisfied, after hearing, that an accused person, because of mental illness or mental defect, is unable to understand the nature of the proceedings against him, or to give evidence in his own defense or to instruct counsel on his behalf, the court may order the accused person to be confined and treated in the Delaware State Hospital until he is capable of standing trial...."

on the other hand, contends that defendant's "delusional system" simply results in amnesia concerning the circumstances of the alleged offenses, a condition which does not, as a matter of law, render defendant incompetent to stand trial. *Wilson v. United States*, D.C.Cir., 391 F.2d 460 (1968); *Parson v. State*, Del.Supr., 275 A.2d 777 (1971), petition for writ of habeas corpus denied sub nom. *United States Ex Rel. Parson v. Anderson*, D.Del., 354 F.Supp. 1060 (1972), aff'd, 3d Cir., 481 F.2d 94 (1973); see also *Smith v. State*, Del. Supr., 344 A.2d 251 (1975). While defendant rejects the State's amnesia argument on the ground that defendant, unlike an amnesiac, cannot rationally evaluate the evidence presented, he argues that even if the Court accepts the State's argument, he should be ruled incompetent to stand trial since his lack of memory concerns the circumstances of the alleged offenses. *Wilson v. United States*, supra; *Parson v. State*, supra.

Due process requires that a defendant be competent to stand trial. See *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The test of legal competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), conviction aff'd after new trial, 8th Cir., 295 F.2d 743 (1961); *Harris v. State*, Del.Supr., 410 A.2d 500 (1979); *Williams v. State*, Del.Supr., 378 A.2d 117 (1977), cert. denied, 436 U.S. 908, 98 S.Ct. 2241, 56 L.Ed.2d 406 (1978); *Mills v. State*, Del.Supr., 256 A.2d 752 (1969).

Amnesia is relevant to the determination of competency only when the loss of memory concerns the circumstances of the alleged crime. *Wilson v. United States*, supra; *Parson v. State*, supra. Moreover, even amnesia concerning the facts of the offense does not render an accused incompetent as a matter of law. See *Morrow v. State*, 293 Md. 247, 443 A.2d 108 (1982). Rather, in determining competency when amnesia concerning the circumstances of the crime is the fact, a court should consider the extent to which the amnesia affects the accused's ability to consult with his lawyer; the extent to which the amnesia affects the defendant's ability to testify on his own behalf; the extent to which the evidence in the suit could be extrinsically reconstructed in view of the defendant's amnesia including evidence relating to the crime itself, as well as any reasonably possible alibi; the extent to which the State assisted the accused and his counsel in that reconstruction; the strength of the prosecution's case; that is, whether it is such as to negate all reasonable hypotheses of innocence;[3] and any other facts and circumstances which would indicate whether the defendant had a fair trial.[4] *Wilson v. United States*, supra; *Parson v. State*, supra.

Despite the utility of the guidelines set forth in *Wilson* and adopted by our Supreme Court in *Parson*, the Court is not persuaded by the State's amnesia argument for two reasons. First, in both *Wilson* and *Parson*, the evidence demonstrated and the Courts assumed that the defendant, while lacking memory of the circumstances of the alleged offenses, could nevertheless rationally evaluate those circumstances when they were presented to him. In the instant case, both of the doctors who examined the defendant believe that he cannot rationally integrate what he is told about the circumstances of the alleged offenses into his assessment of the offenses. Dr. Galliani stated that "the in-

---

**3.** If there is a substantial possibility (shown by the evidence) that the defendant could, but for his loss of memory, establish an alibi or other defense, it should be presumed that he would have been able to do so. *Wilson v. United States*, supra; *Parson v. State*, supra.

**4.** In *Wilson* and *Parson*, the defendants' competency was considered post-trial.

formation that ... [defendant] receives undergoes a rather drastic delusional transformation. So that what goes in more often than not has very little to do with what comes out, primarily in the areas of the charges."

Second, while loss of memory may play some part in defendant's behavior, both doctors testified that amnesia does not explain defendant's behavior. Defendant has not simply forgotten the facts. Indeed, defendant's statements to Dr. Galliani indicate that he has some memory of at least the August 17 incident.[5] Defendant, unlike a mere amnesiac, misinterprets and views irrationally the facts presented to him.

In the instant case, the examining doctors agree that defendant understands the nature of the proceedings against him. Dr. Dogan also believes that "in some areas of evidence [defendant] ... is capable. He has own account of his whereabouts and his actions." Nevertheless, Dr. Dogan testified that defendant probably could not testify rationally about the events of the alleged offenses. Dr. Galliani likewise testified that as of the date of his examination of defendant, he did not believe that defendant could give evidence that would be rational or would be rationally able to assist counsel in the overall preparation of his case.

In their reports, both doctors opined that defendant could not adequately assist counsel. In her testimony, however, Dr. Dogan was more tentative. She indicated that defendant would be able to: (1) make reasonably rational contributions to à discussion about who he would like to have sit on his jury; (2) discuss with his attorney what questions counsel should ask of a witness; and (3) assist his attorney in determining who he should call as a witness as part of his defense. In fact, Dr. Dogan testified that defendant had named a couple of potential witnesses with whom he thought she should talk. Moreover, Dr. Dogan testified that her opinion that defendant would not be able to meaningfully advise counsel was based solely on the fact that he would not discuss the charges with her. She indicated that defendant may very well be willing to discuss the charges with his attorney. While Dr. Dogan testified that she does not feel that defendant is malingering, she admitted that she does not have any facts to substantiate such an impression.

Like Dr. Dogan, Dr. Galliani was somewhat more tentative in his testimony. Dr. Galliani emphasized that defendant does not have any difficulty understanding what he is being told. The "main problem arises when he has to integrate this information and give it back [in] a rational way." Despite his belief that defendant is not malingering, Dr. Galliani admitted that the competency test he administered to defendant could be easily faked. Moreover, he acknowledged that defendant may be manipulative, and further admitted that he had to rely upon defendant's subjective answers to various subjects.

While both doctors opine that defendant cannot assist his counsel, and therefore, is incompetent to stand trial, the Court rejects such opinions as medical conclusions, accord *State v. Knights*, Me. Supr., 482 A.2d 436 (1984), not well-supported by the doctors' own findings.[6] Dr. Dogan concludes that defendant cannot adequately assist his attorney. Nevertheless, she admits that he could assist his counsel in the selection of jurors and the procurement of witnesses on his behalf, and indeed may be able to discuss the charges against him with counsel. Dr. Galliani concludes that defendant is not malingering. Nevertheless, he concedes that defendant could have faked the competency test he adminis-

---

5. Defendant told Dr. Galliani that on the evening of August 17, he got up to take the trash out and was gone about ten minutes. When he returned, he went to the kitchen, heard a noise in the bedroom, and upon turning on the bedroom light, found that his wife had been shot.

6. Competency to stand trial is a legal, not a medical concept. See *State v. Bertrand*, 123 N.H. 719, 465 A.2d 912 (1983).

tered and could have manipulated the psychological test results. Dr. Galliani also concludes that as of the date of his examination of defendant, defendant could not give evidence on his behalf. Yet, the psychologist's report indicates that defendant has some recollection—rational or irrational—of the facts of at least the August 17 incident.[7] Finally, both doctors' opinions are based on mental evaluations conducted nearly one year ago.

 Due process requires that the defendant be afforded a fair, not a perfect trial, and that he be able to consult with his lawyer with a reasonable, not a perfect degree of rational understanding. The fact that defendant may suffer from some level of mental disturbance does not mean that he is incompetent in the legal sense. See *State v. Ledger*, Me.Supr., 444 A.2d 404 (1982); see also *State v. Knights*, supra. In fact, and on balance, the Court concludes that the defendant, on this record, is legally competent to stand trial.

In reaching this conclusion of competency, the Court is not unaware that the medical evidence presented tends toward an opposite conclusion. The Court is also aware of the possibility of changes in defendant's condition and the fact that a substantial period of time has elapsed since defendant was last tested, in depth. The Court, therefore, directs that this matter should be scheduled for trial as soon as possible. Immediately prior to trial, the parties should be prepared to submit updated[8] mental evaluations of defendant to the trial court. If the trial Judge deems it appropriate, another hearing to determine defendant's competency at that time can be held on the eve of trial.

IT IS SO ORDERED.

---

**7.** See note 5, supra.

**8.** The Court suggests that the evaluations be conducted not more than one month prior to trial.